Opinion issued December 8, 2005









Opinion issued December 8,
2005






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-01216-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



HTS SERVICES, INC., Appellant

 

V.

 

HALLWOOD REALTY PARTNERS, L.P., Appellee

 

 



On Appeal from the 295th District Court

Harris County, Texas

Trial Court Cause No. 2002-08100A

 








 

 



O P I N I O N

After a bench trial in this
post-judgment garnishment proceeding, the trial court rendered judgment in
favor of appellee, Hallwood Realty Partners, L.P. (“Hallwood”).  Appellant, HTS Services, Inc. (“HTS”),
contends that the trial court erred in discharging the writ of garnishment
because the evidence is legally insufficient to support the trial court’s
finding that Hallwood owed no money to HTS’s judgment debtor, and thus had no
funds upon which HTS could levy a writ of garnishment.  HTS further contends that it conclusively
proved that Hallwood owed the funds it sought to garnish to The Herman Group,
L.P., the debtor named in HTS’s judgment, pursuant to a contract Hallwood had
with The Herman Group, L.P., or, alternatively, that the trial court’s finding
is against the great weight and preponderance of the evidence.  We hold that the evidence supports the trial
court’s findings and therefore affirm.

Factual
and Procedural Background

In March 2003, HTS obtained a
judgment against The Herman Group, L.P. for failure to pay a debt.  HTS subsequently filed an application for
writ of garnishment against Hallwood Commercial Real Estate LLC.  In its answer to the writ, Hallwood
Commercial Real Estate LLC stated it “was not indebted to Debtor, The Herman
Group, L.P. (“Debtor”)[,]” but was aware of “an agreement between Hallwood
Realty Partners and Debtor or a person related to Debtor.”  (Emphasis added).  John Tuthill, Hallwood Commercial Real Estate
LLC’s Vice-President, verified the answer.

HTS nonsuited the first writ and then
filed an amended application for writ of garnishment against Hallwood, alleging
that Hallwood and The Herman Group, L.P. were parties to a consulting contract
under which Hallwood paid The Herman Group, L.P. a monthly fee.  In its answer, Hallwood stated that the
consulting agreement was between Hallwood and “Sherri Herman d/b/a The Herman
Group”—not “The Herman Group, L.P. (which is a separate legal entity).”  Hallwood further stated that to its
knowledge, The Herman Group, L.P. did not exist at the time Hallwood entered
into the consulting agreement with Sherri Herman.  Tuthill verified Hallwood’s answer.  HTS controverted Hallwood’s denial, asserting
that The Herman Group, L.P. “is either a successor-in-interest or the same
entity as The Herman Group, all of which are merely vehicles for Sherri Herman
to conduct business.”  Counsel for HTS
verified HTS’s controverting answer.

The trial court held a bench trial on
the writ of garnishment on August 16, 2004. 
After hearing the evidence, the trial court rendered a judgment that
dismissed the writ of garnishment against Hallwood and ordered that HTS take
nothing.  In a separate instrument, the
trial court entered findings of fact and conclusions of law.  The trial court found as follows:

1.                
On May 24, 2000,
Hallwood Realty Partners, L.P. entered into an agreement with Sherri Herman and
“The Herman Group” (an assumed name used by Sherri Herman).

 

2.                
On May 31, 2003,
Hallwood Realty Partners, L.P. extended its agreement with Sherri Herman and
“The Herman Group.”

 

3.                
On December 2,
2003, Hallwood Realty Partners, L.P. and Sherri Herman and “The Herman Group”
terminated their agreement.

 

4.                
The Herman Group,
L.P. is a separate legal entity from Sherri Herman and “The Herman Group.”

 

5.                
Hallwood Realty
Partners, L.P. never had any contract with The Herman Group, L.P., never owed
any money to The Herman Group, L.P., and does not owe any money to The Herman
Group, L.P.

 

6.                
Garnishor HTS
Services, Inc. obtained a judgment against The Herman Group, L.P. and not
Sherri Herman or “The Herman Group.”

 

7.                
The Writ of
Garnishment issued on behalf of HTS Services, Inc. garnished any funds that
Hallwood Realty Partners, L.P. owed to The Herman Group, L.P.

 

8.                
The Writ of
Garnishment issued on behalf of HTS Services, Inc. did not garnish any funds
that Hallwood Realty Partners, L.P. owed to Sherri Herman or “The Herman
Group.”

 

The
trial court concluded as follows:

 

1.                
The Herman Group,
L.P. is a separate legal entity from Sherri Herman and “The Herman Group” (an
assumed name used by Sherri Herman).

 

2.                
The Writ of
Garnishment issued on behalf of HTS Services, Inc. did not cover funds that
Hallwood Realty Partners, L.P. owed to Sherri Herman and “The Herman Group.”

 

3.                
Because Hallwood
Realty Partners, L.P. never owed money to The Herman Group, L.P., Hallwood did
not violate the Writ of Garnishment issued on behalf of HTS Services, Inc.

 

4.                
Hallwood Realty
Partners, L.P. is not liable to Garnishor HTS Services, Inc. for any monies
owed by The Herman Group, L.P. to HTS Services, Inc.

 

5.                
Hallwood Realty
Partners, L.P. is discharged from the Writ of Garnishment served upon it in
this case, and Garnishor HTS Services, Inc. shall not recover anything from
Hallwood Realty Partners, L.P.

 

          On
appeal, HTS contends that (1) the trial court erred in finding that Hallwood’s
contract was with “Sherri Herman d/b/a The Herman Group” because Hallwood
failed to prove that any such entity exists, and (2) the evidence is
insufficient to support the trial court’s finding that Hallwood’s contract was
with “Sherri Herman d/b/a The Herman Group.”

Analysis

Standard of Review

          In
an appeal from a bench trial, a trial court’s findings of fact have the same
weight as a jury’s verdict.  Amador v.
Berrospe, 961 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, writ
denied).  When challenged, findings of
fact are not conclusive if, as here, there is a complete reporter’s
record.  Id.  When there is a reporter’s record, the trial
court’s findings of fact are binding only if supported by the evidence.  Id. 
If the findings are challenged, we review the sufficiency of the
evidence supporting the findings by applying the same standards that we use in
reviewing the legal or factual sufficiency of the evidence supporting jury
findings.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).

          If
a party attacks the legal sufficiency of an adverse finding on an issue as to
which it bears the burden of proof, then it must demonstrate on appeal that the
evidence conclusively established all vital facts in support of the issue.  Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989).  In
reviewing such a “matter of law” challenge, we examine the record for evidence
that supports the challenged finding, ignoring evidence to the contrary.  Id. 
If no evidence exists to support the finding, we examine the entire
record to determine if the contrary proposition is established as a matter of
law.  Id.

          In
reviewing a factual sufficiency point, we consider all the evidence supporting
and contradicting the finding.  Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We set aside the verdict only if the finding
is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).  In a bench
trial, the trial court, as factfinder, is the sole judge of the credibility of
the witnesses.  S.W. Bell Media, Inc.
v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ
denied).

          We
review de novo a trial court’s conclusions of law, and uphold them on appeal if
the judgment can be sustained on any legal theory supported by the
evidence.  BMC Software Belgium v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002); In re Moers, 104 S.W.3d
609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  An appellant may not challenge a trial
court’s conclusions of law for lack of factual sufficiency, but we review the
legal conclusions drawn from the facts to determine their correctness.  BMC Software Belgium, 83 S.W.3d at
794.

Burden of Proof

          In
its first issue, HTS asserts that the trial court erred in finding that
Hallwood’s contract was with “Sherri Herman d/b/a The Herman Group” because
Hallwood failed to show that any such entity exists.  HTS’s argument fails in part because it
improperly shifts the burden of proof to Hallwood.  Moreover, the trial court heard evidence to
support its findings.

Garnishment is a proceeding in which the
property, money, or credits of a debtor that are in the possession of
another—the garnishee—are applied to the payment of the debt.  Bank One, Tex., N.A. v. Sunbelt Sav.,
F.S.B., 824 S.W.2d 557, 558 (Tex. 1992). 
The garnishor may enforce, against the garnishee, any rights the debtor
could have enforced had he sued the garnishee directly.  Beggs v. Fite, 106 S.W.2d 1039, 1042
(Tex. 1937).

The primary issue in a garnishment suit is whether the garnishee
is indebted to, or has in his possession effects belonging to, the debtor . . .
.  The nature of the answer filed by the
garnishee . . . may or may not put in doubt the debtor’s ownership of the
funds.

 

. . . .

 

. . .  [T]he garnishee’s
answer may be of a character that raises doubt about who actually owns funds
admittedly held by the garnishee for another. 
As indicated in the Thompson[1] opinion, an answer of that kind is sufficient standing alone to put
in issue the debtor’s ownership . . . . 
Consequently, the burden of proof falls upon the garnishor to establish
affirmatively that the debtor does own the funds, and the amount owned
by him, if the garnishor wishes to recover any amount on the garnishment theory
that the funds may be applied to the debtor’s indebtedness because they are his
property.  If the garnishor’s proof
fails, he can of course recover nothing.

 

Putman & Putman, Inc. v. Capitol
Warehouse, Inc., 775 S.W.2d 460, 463 (Tex. App.—Austin 1989, writ denied)
(citations omitted).

Here, Hallwood’s answer “raise[d] doubt about
who actually owns funds admittedly held by the garnishee for another.”  Id. 
Hallwood stated in its verified answer that its consulting agreement was
with “Sherri
Herman d/b/a The Herman Group”—not “The Herman Group, L.P. (which is a separate
legal entity).”  Thus, Hallwood asserted
that it was not indebted to The Herman Group, L.P.  Hallwood’s answer “put in issue” The Herman
Group, L.P.’s entitlement to funds under the consulting agreement, and the
burden of proof therefore fell upon HTS as garnishor to establish affirmatively
that The Herman Group, L.P. was entitled to funds under the consulting
agreement.  Id.

Conclusive Proof of the Identity of
the Judgment Debtor

In its brief, HTS acknowledges that it bears the
burden of proof under Putman, but urges that if a garnishee asserts that
a third party owns the funds, we should require the garnishee to show the third
party actually exists.  HTS does not cite
to any law for this proposition. 
Instead, HTS contends that the uncorroborated testimony of a garnishee
cannot establish that another person is doing business under an assumed name if
official public records do not show that an assumed name certificate exists.

          HTS’s
argument fails for two reasons.  First,
the trial court in this case did not have to rely on the garnishee’s
“uncorroborated testimony” in finding that Hallwood’s consulting agreement—the
source of the funds sought by HTS—was with Sherri Herman and The Herman Group,
an assumed name used by Sherri Herman. 
The evidence at trial showed that the consulting agreement, dated May
24, 2000, was signed by Hallwood and Sherri M. Herman as President of The
Herman Group.  The evidence also showed
that The Herman Group, L.P. did not file its certificate of limited partnership
with the Secretary of State until October 13, 2000.  Thus, The Herman Group, L.P. did not exist at
the time the parties entered into the consulting agreement; as a result, The
Herman Group, L.P. was not, and could not have been, a party to the consulting
agreement.  This corroborates Mr.
Tuthill’s testimony that Hallwood contracted with Sherri Herman, who signed the
contract as The Herman Group—and not The Herman Group, L.P.

          Second,
although HTS is correct that Texas law requires parties to file assumed name
certificates[2] and imposes civil[3] and criminal[4] penalties for failing to do so, the fact that
Sherri Herman failed to file an assumed name certificate for The Herman Group
does not mean it was impossible for Hallwood to contract with




The Herman Group.  In fact, the opposite is true under Texas
law.  “Failure to comply with the
provisions of this chapter [mandating the filing of assumed name certificates]
shall not impair the validity of any contract or act by such person . . . .”  Tex. Bus. & Com. Code Ann. § 36.25 (Vernon 2002).  Thus, Sherri Herman’s failure to file an
assumed name certificate did not impair the validity of Hallwood’s contract
with Sherri Herman and The Herman Group.

          Accordingly,
we overrule HTS’s first issue.

Sufficiency of the Evidence

          In
its second issue, HTS asserts that the plain language of the consulting
contract demonstrates that the trial court’s finding that Hallwood’s agreement
was with “Sherri Herman d/b/a The Herman Group” was against the great weight
and preponderance of the evidence.  We
disagree.  As previously discussed, the
plain language of the consulting agreement states that the parties to the
agreement are Hallwood and Sherri M. Herman, who signed the contract in her
capacity as President of The Herman Group. 
The contract does not mention The Herman Group, L.P.—nor could it, since
The Herman Group, L.P. did not exist at the time the parties signed the
contract.  Thus, contrary to HTS’s
argument, the contract indicates that Hallwood contracted with The Herman
Group—not The Herman Group, L.P.

          HTS
observes that the parties’ contract extension and termination agreements added
Sherri Herman, individually, to the agreement.[5] 
According to HTS, no reason existed to add Sherri Herman later if she
was already a party to the original contract by virtue of her d/b/a “The Herman
Group.”  This argument is unavailing
because The Herman Group, L.P. did not exist at the time the parties entered
into the original contract; therefore, The Herman Group, L.P. was not, and
could not have been, a party to the original contract.  If anything, the fact that the parties added
Sherri Herman in her individual capacity to the extension agreement means the
parties also could have added The Herman Group, L.P. in October 2000 when it
was formed, or they could have added The Herman Group, L.P. at the time they
added Sherri Herman individually.  The
parties, however, did not add The Herman Group, L.P. to their contract, and we
cannot simply assume, contrary to the trial court’s findings, “that ‘The Herman
Group’ had always been or was now The Herman Group, L.P.[,]” as HTS would have
us do.  See Putman, 775 S.W.2d at
463 (garnishor has burden of proof to establish affirmatively that debtor does
own funds).

          Here,
sufficient evidence supports the trial court’s finding that Hallwood contracted
with Sherri Herman and The Herman Group, an assumed name used by Sherri
Herman.  First, the contract, dated May
24, 2000, identifies the parties as Hallwood and Sherri M. Herman, who signed
the contract in her capacity as President of The Herman Group.  The Certificate of Limited Partnership of The
Herman Group, L.P. was not filed until October 13, 2000.  Second, Mr. Tuthill, Hallwood’s
Vice-President, testified that Hallwood “never had a contract with The Herman
Group, L.P.”; rather, its contract was with Sherri Herman “and the way she
signed her contract was The Herman Group[.]” 
Third, Hallwood introduced into evidence two checks it sent to Sherri Herman
pursuant to the consulting agreement. 
One check was made payable to “Sherri Herman,” while the other was made
payable to “Sherri Herman dba Herman Group.” 
Thus, the record supports the trial court’s decision that Hallwood did
not enter into a consulting agreement with the same entity against which HTS
obtained its judgment.

Conclusion

          We
conclude that legally and factually sufficient evidence supports the trial
court’s finding that Hallwood contracted with Sherri Herman and The Herman
Group, an assumed name used by Sherri Herman. 
We further conclude that the trial court’s judgment is not contrary to
the great weight and preponderance of the evidence.  Accordingly, we affirm the judgment of the
trial court.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

 











[1] Thompson v. Fulton Bag & Cotton Mills, 286 S.W.2d 411, 414 (Tex. 1956).





[2] Under the Assumed Business or Professional Name Act,
“[a]ny person who regularly conducts business or renders professional services
. . . in this state under an assumed name shall file in the office of the
county clerk in each county in which such person has . . . business
or professional premises . . . a certificate setting forth the assumed name
under which such business or professional service is . . . conducted or
rendered[.]”  Tex. Bus. & Com. Code Ann. § 36.10(a)(1) (Vernon 2002).

 





[3] If a person fails to file an assumed name certificate
as required by Chapter 36, such person is not permitted to bring suit until she
files an assumed name certificate.  Id.
§ 36.25; see also Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 55
(Tex. 2003) (failure to file an assumed name certificate “affects a plaintiff’s
capacity to bring suit”).

 





[4] Intentional failure to file an assumed name
certificate is a Class A misdemeanor.  Tex. Bus. & Com. Code Ann. § 36.26
(Vernon 2002).





[5] On May 31, 2003, the parties agreed to extend the
original contract for one year.  This
extension agreement was signed by Hallwood, by Sherri M. Herman in her capacity
as President of The Herman Group, and by Sherri M. Herman in her individual
capacity.  On December 2, 2003, the
parties terminated the contract.  The
termination agreement was signed by Hallwood, by Sherri M. Herman in her
capacity as President of The Herman Group, and by Sherri M. Herman in her
individual capacity.