BMC SOFTWARE BELGIUM,
N.V., Petitioner,

v.

Michel MARCHAND, Respondent.

No. 00–1019.

Supreme Court of Texas.

Argued Sept. 5, 2001.

Decided June 27, 2002.

Rehearing Denied Aug. 29, 2002.

790 

 

 

 

 

 

 

 

 

 

Merritt B. Chastain, III, Thomas H. Wilson, Houston, Vinson & Elkins, for Petitioner.

Stuart M. Nelkin, Carol Nelkin, Nelkin & Nelkin, Houston, for Respondent.

Justice BAKER delivered the opinion of the Court.

This is an interlocutory appeal from the denial of a foreign corporation's special appearance. A divided court of appeals affirmed the trial court's ruling. 80 S.W.3d 52. We conclude that the foreign corporation's contacts with Texas are insufficient to create either specific or general jurisdiction. We also conclude that the trial court did not abuse its discretion in denying the plaintiff's motion to continue the special appearance hearing. We therefore reverse the court of appeals' judgment and render judgment dismissing the plaintiff's claims against the foreign corporation for want of jurisdiction.

## I. BACKGROUND

Michel Marchand, a Belgian citizen, was employed by Platinum Technologies in Belgium. In March 1996, Marchand began negotiating with Gerd Ordelheide and Adri Kok for employment with BMC Software Belgium, N.V. (BMCB). Ordelheide and Kok were directors of BMCB, a wholly-owned subsidiary of BMC Software, Inc. (BMCS), a Delaware corporation headquartered in Houston.

On March 29, 1996, Marchand and BMCB signed a letter agreement outlining the terms of Marchand's employment with BMCB, including the offer of options to purchase 20,000 shares of BMCS stock. The agreement did not specify when the options would be granted or when Marchand could exercise them. The letter agreement also referenced a "management agreement" that Marchand had apparently presented to BMCB. On June 13, 1996, BMCB and Marchand executed the management agreement between BMCB and a company called Procurement, N.V., of which Marchand was the sole officer and director. The record shows that Marchand asked BMCB to hire Procurement as a management company so that Marchand could work for Procurement as an independent contractor rather than directly for BMCB. Apparently, this arrangement enabled Marchand to reduce his Belgian tax liability. The management agreement was in German, and it stated that Belgian law applies and the court at Brussels had exclusive jurisdiction.

When Marchand actually began working for BMCB is unclear. But it is clear that in July 1997, BMCB discharged Procurement and Marchand. Marchand was never granted any options to purchase BMCS stock. He sued BMCB and BMCS for breach of contract, fraud, negligent misrepresentation, and declaratory relief. Marchand alleged both specific and general jurisdiction over BMCB. BMCB filed a special appearance, which the trial court denied. BMCB appealed the trial court's interlocutory order. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(7). The court of appeals affirmed, 80 S.W.3d at 55, and BMCB petitioned this Court for review.

## II. THIS COURT'S JURISDICTION

Until 1997, a trial court's order denying a special appearance was reviewable only on appeal after trial. *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 307 (Tex.1994). But the Legislature amended section 51.014 of the Civil Practice and Remedies Code to permit an interlocutory appeal from a trial court's ruling on a special appearance.

Typically, a court of appeals judgment in an interlocutory appeal is conclusive and an appeal to this Court is not allowed. *See* TEX. GOV'T CODE § 22.225(b). However, because there is a dissent in the court of appeals, we may exercise jurisdiction in this case. *See* TEX. GOV'T CODE § 22.225(c).

## III. APPLICABLE LAW

### A. SPECIAL APPEARANCE— STANDARD OF REVIEW

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *See McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex.1965). A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985). This Court has never clearly articulated the standard for reviewing a trial court's order denying a special appearance. The Fourth Court of Appeals has held that, because personal jurisdiction involves both legal and factual questions, appellate courts should review

the trial court's decision for an abuse of discretion. *See, e.g., Klenk v. Bustamante,* 993 S.W.2d 677, 681 (Tex.App.-San Antonio 1998, no pet.). However, other courts of appeals review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions *de novo. See, e.g., E.L.M. LeBlanc v. Kyle,* 28 S.W.3d 99, 101 (Tex.App.-Texarkana 2000, pet. denied); *In re Estate of Judd,* 8 S.W.3d 436, 440–41 (Tex.App.-El Paso 1999, no pet.); *C–Loc Retention Sys., Inc. v. Hendrix,* 993 S.W.2d 473, 476 (Tex. App.-Houston [14th Dist.] 1999, no pet.); *Cadle v. Graubart,* 990 S.W.2d 469, 471 (Tex.App.Beaumont 1999, no pet.); *Ball v. Bigham,* 990 S.W.2d 343, 347 (Tex.App.Amarillo 1999, no pet.); *Garner v. Furmanite Australia Pty, Ltd.,* 966 S.W.2d 798, 802 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Al–Turki v. Taher,* 958 S.W.2d 258, 260–61 (Tex.App.-Eastland 1997, pet. denied).

■ We agree with the latter view and disapprove of those cases applying an abuse of discretion standard only.[1] Whether a court has personal jurisdiction over a defendant is a question of law. *See Hotel Partners v. Craig,* 993 S.W.2d 116, 120 (Tex.App.-Dallas 1994, writ denied) (stating that this Court's decision in *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991), suggests that personal jurisdiction is a legal question). However, the trial court frequently must resolve questions of fact before deciding the jurisdiction question. *See E.L.M. LeBlanc,* 28 S.W.3d at 101; *C–Loc Retention Sys.,* 993 S.W.2d at 476. If a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *See Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). Our courts of appeals may review the fact findings for both legal and factual sufficiency. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996). This Court's review of the trial court's fact findings is limited to legal sufficiency. *Ortiz,* 917 S.W.2d at 772.

■ Appellate courts review a trial court's conclusions of law as a legal question. *Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, pet. denied). The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Templeton v. Dreiss,* 961 S.W.2d 645, 656 n. 8 (Tex.App.-San Antonio 1998, pet. denied); *Dallas County v. Sweitzer,* 881 S.W.2d 757, 763 (Tex.App.-Dallas 1994, writ denied). If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Scholz v. Heath,* 642 S.W.2d 554, 559 (Tex. App.-Waco 1982, no writ).

---

**1.** *See Whalen v. Laredo Nat'l Bancshares Inc.,* 37 S.W.3d 89, 91 (Tex.App.-San Antonio 2000, pet. denied); *Joe Guerra Exxon Station v. Michelin Tyre Pub. Ltd.,* 32 S.W.3d 383, 386 (Tex.App.-San Antonio 2000, no pet.); *Case v. Grammar,* 31 S.W.3d 304, 307–08 (Tex.App.-San Antonio 2000, no pet.); *Jones v. J.P. Sauer & Sohn,* 27 S.W.3d 157, 161 (Tex.App.-San Antonio 2000, pet. denied); *Eakin v. Acosta,* 21 S.W.3d 405, 407–08 (Tex.App.-San Antonio 2000, no pet.); *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A.,* 18 S.W.3d 706, 711 (Tex.App.-San Antonio 2000), *rev'd on other grounds,* 49 S.W.3d 347 (Tex.2001); *Transportes Aereos de Coahuila, S.A. v. Falcon,* 5 S.W.3d 712, 717 (Tex.App.-San Antonio 1999, pet. denied); *Jones v. Beech Aircraft Corp.,* 995 S.W.2d 767, 769–70 (Tex.App.-San Antonio 1999, pet. dism. w.o.j.); *Magnolia Gas Co. v. Knight Equip. Mfg. Corp.,* 994 S.W.2d 684, 689 (Tex.App.-San Antonio 1998, no pet.); *Klenk,* 993 S.W.2d at 681.

When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987); *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984). When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989); *Zac Smith & Co.*, 734 S.W.2d at 666. For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992).

## B. IN PERSONAM JURISDICTION

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM.CODE §§ 17.041–.045. That statute permits Texas courts to exercise jurisdiction over nonresident defendants that "does business" in Texas, and the statute lists some activities that constitute "doing business." TEX. CIV. PRAC. & REM. CODE § 17.042. The list of activities, however, is not exclusive. We have held that section 17.042's broad language extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). Thus, we rely on precedent from the United States Supreme Court and other federal courts, as well as our own State's decisions, in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *See Guardian Royal*, 815 S.W.2d at 226; *U–Anchor Adver.*, 553 S.W.2d at 762.

Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (discussing the constitutional boundaries of personal jurisdiction). Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *Guardian Royal*, 815 S.W.2d at 227. However, a defendant should not be subject to a foreign court's jurisdiction based upon "random," "fortuitous," or "attenuated" contacts. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system, the minimum contacts analysis is particularly important when the defendant is from a different country. *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80

L.Ed.2d 404 (1984); *Guardian Royal*, 815 S.W.2d at 226. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Guardian Royal*, 815 S.W.2d at 228. In contrast, general jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Guardian Royal*, 815 S.W.2d at 228; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990).

### IV. ANALYSIS

In his original petition in the trial court, Marchand alleged the following to support jurisdiction over BMCB: (1) BMCB is operated by and is a wholly owned subsidiary of BMCS; (2) BMCS provides support to and uses its wholly owned subsidiaries such as BMCB to jointly market BMCS's products worldwide; (3) BMCS and BMCB have the same officers; (4) BMCB has continuous and systematic contacts with BMCS; (5) BMCB uses stock in BMCS to entice employees to work for it; and (6) the stock allegedly offered to Marchand is located in Houston, Texas.

The court of appeals determined that the trial court could have reasonably concluded that BMCB failed to negate all possible bases for establishing specific jurisdiction. In doing so, the court of appeals explained that the evidence shows that BMCB and BMCS officers discussed Marchand and the stock option offer in Texas. 80 S.W.3d at 59–60. Furthermore, the court of appeals concluded that the record showed that BMCB had sufficient continuous and systematic contacts with BMCS and thus Texas to establish the trial court's general jurisdiction. In so concluding, the court of appeals relied upon alleged conversations in Texas about Marchand between BMCB and BMCS officers, BMCB's selling BMCS's software and services, BMCS's including its subsidiaries' financial performance on annual reports, and BMCB providing its employees BMCS stock options as part of an employee incentive plan. 80 S.W.3d at 58–59. Because the court of appeals determined the trial court could have found specific and general jurisdiction over BMCB, it did not reach BMCB's argument that the evidence is not legally sufficient to establish that BMCB was BMCS's alter ego. 80 S.W.3d at 59.

### A. SPECIFIC JURISDICTION

Marchand asserts that the trial court had specific jurisdiction over BMCB because BMCB committed a tort in whole or in part in Texas. *See* TEX. CIV. PRAC. & REM.CODE § 17.042(2). Specifically, Marchand alleges that Ordelheide and Max Watson, BMCS's chairman and chief executive officer, discussed in Texas the stock-options offer BMCB made to Marchand and, in this conversation, they planned to defraud him. Marchand argues that the discussion Ordelheide and Watson had in Texas forms the basis of his fraud and negligent misrepresentation claims about the stock options. In response, BMCB argues that there is no evidence in the record to support the trial court's implied fact findings to support specific jurisdiction. We agree with BMCB.

■ Here, Marchand alleges that his fraud and negligent misrepresentation claims arise from the alleged Watson–Ordelheide conversation in Texas. *See Schlobohm*, 784 S.W.2d at 357 ("Where the activities of a defendant in a forum are isolated or disjointed ... jurisdiction is proper if the cause of action arises from a particular activity."). But they do not. The nature of the claims demonstrate that they can only arise from BMCB's contact

with Marchand, which all occurred outside of Texas. Even assuming Watson and Ordelheide talked in Texas about Marchand's employment and the stock options, Marchand was not a party to those conversations. BMCB negotiated with Marchand about his employment, and offered the stock options to Marchand, in Europe. Moreover, Marchand accepted the employment offer in Belgium and worked in Belgium. Consequently, BMCB made no representations to Marchand in Texas, and he did not rely to his detriment on the conversation in Texas. *See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992) (fraud requires showing that plaintiff acted in reliance on defendant's material misrepresentation); *Federal Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (negligent misrepresentation requires that the plaintiff justifiably rely on the defendant's representation). Therefore, Marchand's alleged damages arose outside of Texas. *See, e.g., Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin,* 974 S.W.2d 918, 926 (Tex.App.El Paso 1998, no pet.) (holding that specific jurisdiction did not exist where defendant deposited money in Texas but misrepresentations to plaintiffs about that money occurred elsewhere).

There is no evidence to support the trial court's conclusion that BMCB committed a tort in whole or in part in Texas so that specific jurisdiction exists. *See Guardian Royal,* 815 S.W.2d at 227; Tex. Civ. Prac. & Rem.Code § 17.042(2); *see also Roberson,* 768 S.W.2d at 281. Accordingly, we conclude that the trial court lacked specific jurisdiction over BMCB.

## B. General Jurisdiction

Marchand also contends that the trial court has general jurisdiction over BMCB.

Marchand relies on the alleged Watson–Ordelheide conversation and BMCB's purchasing products from BMCS in Texas. On the other hand, BMCB asserts that these events are not enough to establish general jurisdiction. We agree and conclude that neither of the events Marchand relies upon are continuous or systematic so as to establish general jurisdiction in Texas.

▮ General jurisdiction may only be exercised when the nonresident defendant's contacts in a forum are continuous and systematic. *Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868; *Guardian Royal,* 815 S.W.2d at 228; *Schlobohm,* 784 S.W.2d at 357. Though a single act may be enough to show general jurisdiction in some instances, the alleged conversation between Ordelheide and Watson in Texas is not enough here. *See Guardian Royal,* 815 S.W.2d at 230 n. 12. We have recognized that "[g]eneral jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction." *CSR Ltd.,* 925 S.W.2d at 595 (citing *Guardian Royal,* 815 S.W.2d at 228). For the reasons discussed above, the alleged Watson–Ordelheide conversation does not constitute "substantial activities" within the forum to meet the more onerous burden of proving general jurisdiction. *See Guardian Royal,* 815 S.W.2d at 228.

▮ Furthermore, BMCB's purchasing products from BMCS in Texas to distribute in Europe is not enough to establish general jurisdiction. In *Helicopteros,* the United States Supreme Court examined a Colombian corporation's contacts with Texas to decide if Texas courts could exercise general jurisdiction. *Helicopteros,* 466 U.S. at 415–16, 104 S.Ct. 1868. The nonresident defendant had purchased helicopters, equipment, and training services from

a Texas company, sent its employees to Texas for training, and.sent its chief executive officer to Houston for contract negotiation. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. The Supreme Court held that these contacts were insufficient to warrant a Texas court's exercising general jurisdiction. *Helicopteros,* 466 U.S. at 415–16, 104 S.Ct. 1868 (reversing *Hall v. Helicopteros,* 638 S.W.2d 870 (Tex.1982)). The Court noted that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868.

This case is analogous to *Helicopteros.* Marchand's claims against BMCB do not arise from the purchases BMCB made from BMCS. To the contrary, Marchand's claims arise from his employment with BMCB in Belgium and the alleged misrepresentations BMCB made to Marchand concerning his employment. BMCB's unrelated purchases in Texas from BMCS are not the type of contacts that justify a finding that BMCB could have "reasonably anticipate[d] being haled into court" here. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *see also Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868.

There is no evidence to support the trial court's conclusion that BMCB's contacts with Texas were continuous and systematic so that they established general jurisdiction. *See Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868; *Guardian Royal,* 815 S.W.2d at 228; *Schlobohm,* 784 S.W.2d at 357; *see also Roberson,* 768 S.W.2d at 281. Thus, we conclude that the trial court lacked general jurisdiction over BMCB.

### C. ALTER EGO

Marchand's jurisdictional allegations in his original petition can be read to allege

that the trial court has general jurisdiction over BMCB because it is BMCS's alter ego. In response, BMCB contends that there is no evidence to support a determination that it is BMCS's alter ego.

 Personal jurisdiction may exist over a nonresident defendant if the relationship between the foreign corporation and its parent corporation that does business in Texas is one that would allow the court to impute the parent corporation's "doing business" to the subsidiary. *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983); *Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir.1978). The rationale for exercising jurisdiction is that "the parent corporation exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'" *Hargrave,* 710 F.2d at 1159 (citations omitted); *see also Conner v. ContiCarriers & Terminals, Inc.,* 944 S.W.2d 405, 418 (Tex.App.-Houston [14th Dist.] 1997, no writ). The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation. *Walker,* 583 F.2d at 167; *Conner,* 944 S.W.2d at 418–19; *see also Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 375 (Tex.1984). This is because Texas law presumes that two separate corporations are indeed distinct entities:

> The general rule seems to be that courts will not because of stock ownership or interlocking directorship disregard the separate legal identities of corporations, unless such relationship is used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime.

*Bell Oil & Gas Co. v. Allied Chem. Corp.,* 431 S.W.2d 336, 339 (Tex.1968) (citations omitted).

■ To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. *Conner,* 944 S.W.2d at 418–19 (discussing *Hargrave,* 710 F.2d at 1160; *Walker,* 583 F.2d at 167). But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *See Hargrave,* 710 F.2d at 1160; *Conner,* 944 S.W.2d at 419; *see also Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571, 573 (Tex.1975).

■ We conclude that there is no evidence to support any implied findings by the trial court to support that BMCB was BMCS's alter ego so that general jurisdiction exists in Texas. In *Gentry,* this Court held that "[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *Gentry,* 528 S.W.2d at 573. Though *Gentry* dealt with whether a subsidiary corporation should be regarded as its parent's alter ego for purposes of service of process, the Fifth Circuit and our courts of appeals have relied on its alter ego rule in determining personal jurisdiction. *See Walker,* 583 F.2d at 167; *Gutierrez v. Raymond Int'l, Inc.,* 484 F.Supp. 241, 253 (S.D.Tex.1979); *Conner,* 944 S.W.2d at 419; *3–D Elec. Co. v. Barnett Constr. Co.,* 706 S.W.2d 135, 139 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). Accordingly, general jurisdiction does not extend to BMCB to the extent Marchand relies on BMCB and BMCS having duplicate officers.

In addition to alleging that BMCB and BMCS share the same officers, Marchand argues that the record shows the following to establish BMCB's alter-ego status: (1) BMCS's SEC documents incorporate BMCB's financial performance, and BMCS's annual report includes BMCB's financial performance on a consolidated basis; (2) BMCS gives BMCB financial assistance; (3) BMCS provides stock options for BMCB's employees; (4) BMCS treats BMCB's offices, employees, and accounts receivable as its own property; (5) BMCS personnel has offices at its subsidiary facilities; (6) BMCS performs human resources, accounting, risk management, and marketing services for BMCB; (7) BMCS recruits employees for BMCB and approves hiring and competition; (8) BMCB and BMCS use the same letterhead and use the terms "BMC" and "BMC Software" interchangeably; and (9) Watson's deposition testimony shows that BMCB is a mere BMCS operation or department.

■ There is no evidence in the record to support Marchand's assertions that BMCB is BMCS's alter ego. There are no SEC filings in the record, and nothing in BMCB's annual report supports a reasonable inference that BMCS considered its subsidiaries' revenue as its own or that it offered BMCB financial assistance. The annual report's listing international sales figures could represent either the subsidiaries' revenue or BMCS's revenue from selling its products *to* those subsidiaries. Moreover, the annual report's listing Belgium as a location of *both* International Offices and Independent Agents fails to show that BMCS treated its subsidiaries as mere departments or offices. BMCS's referencing its subsidiaries in its annual report is a common business practice, which the Internal Revenue Service, the SEC, and generally accepted accounting

principles recommend. *See Calvert v. Huckins,* 875 F.Supp. 674, 678–79 (E.D.Cal.1995). Finally, the annual report's stating that BMCS engaged in hedging transactions to protect against the volatility of foreign currency exchange rates is not evidence that BMCS engaged in risk management for BMCB.

■■■ Additionally, the letter agreement between Marchand and BMCB is not evidence that BMCS typically recruits, controls, and approves personnel whom BMCB employs or that BMCS typically compensates BMCB employees with stock options. And, in any event, a parent company's offering a stock option plan to a subsidiary's employees is acceptable under IRS regulations and is not evidence of abnormal control over the subsidiary. *See In re Silicone Gel Breast Implants Prods. Liab. Litig. (MDL 926),* 837 F.Supp. 1128, 1136 (N.D.Ala.1993), *vacated in part on other grounds by,* 887 F.Supp. 1455 (N.D.Ala.1995).

Further, Watson's deposition testimony that BMCS employees were "from time to time … in the offices of a variety of our subsidiaries" does not permit a reasonable inference that BMCS exerted such control over BMCB that the two entities ceased to be separate. *See Hargrave,* 710 F.2d at 1160; *Conner,* 944 S.W.2d at 418. Moreover, in discussing certain BMCS employees in his deposition, Watson identified a senior vice-president for worldwide marketing and a vice—president for human resources. But the existence of these two positions for BMCS is not evidence that BMCS performed marketing and human resources for its subsidiaries, or that, even if BMCS did perform such services, the subsidiaries were not charged for them. Similarly, BMCS and BMCB having letterhead with "BMC Software" is no evidence that the two entities do not observe corporate formalities, because both entities have "BMC Software" as part of their names.

In sum, the record does not reveal any evidence to support the trial court's conclusion that BMCB was BMCS's alter ego. *See Hargrave,* 710 F.2d at 1160; *Walker,* 583 F.2d at 167; *Conner,* 944 S.W.2d at 419; *see also Roberson,* 768 S.W.2d at 281. We therefore conclude that the trial court did not have general jurisdiction over BMCB based on BMCS's "doing business" in Texas.

## V. OTHER ISSUES

Before the special appearance hearing, Marchand objected to the hearing going forward because of BMCB's and BMCS's alleged failure to cooperate in discovery and requested that the trial court continue the hearing so that he could complete discovery. The trial court overruled the objection and denied the motion for continuance. Marchand asserts that, even if we reverse the court of appeals' judgment, we should remand his claims for further proceedings, because the trial court prevented him from conducting sufficient discovery before the special appearance hearing.

■■■ This Court will not disturb a trial court's order denying a motion for continuance unless the trial court has committed a clear abuse of discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex. 1986). A trial court "abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). Here, the record shows that Marchand had ample time to conduct, and did conduct, discovery. BMCB filed its special appearance on January 29, 1999, and the trial court held the hearing seven months later on September 7, 1999. During that time, Marchand deposed Watson and served numerous written discovery requests on BMCS and BMCB. Although BMCB and BMCS objected to several discovery requests, the record does not reveal that Marchand ever filed a motion to com-

pel or otherwise attempted to obtain any discovery BMCB and BMCS did not provide. Based on the record, we cannot conclude that the trial court abused its discretion in overruling Marchand's objection to the special appearance hearing and denying his motion for a continuance to conduct further discovery.

## VI. CONCLUSION

We hold that there is no evidence to support the trial court's conclusion that BMCB's contacts with Texas were sufficient to confer either specific or general jurisdiction. In so holding, we also conclude that there is no evidence to support a finding that BMCB was BMCS's alter ego so that general jurisdiction in Texas exists. Finally, we hold that the trial court did not abuse its discretion in denying its motion to continue the special appearance hearing. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing Marchand's claims against BMC Software Belgium, N.V. for want of jurisdiction.