**TURNER SCHILLING, L.L.P., Appellant**

v.

**GAUNCE MANAGEMENT, INC., Appellee.**

No. 05–06–01051–CV.

Court of Appeals of Texas, Dallas.

March 6, 2008.

Ben L. Krage, Charles E. Gale, Krage & Janvey, L.L.P., Dallas, TX, for Appellant.

John Lacy Freeman, Barnes & Harrington, PC, Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and O'NEILL.

## OPINION

Opinion by Justice MOSELEY.

Turner Schilling, L.L.P. sued Gaunce Management, Inc. (GMI) for payments claimed to be due on a contract for upgrading GMI's accounting software. GMI filed a special appearance, which the trial court granted, dismissing the case for want of jurisdiction. Turner Schilling appeals, asserting in a single issue that GMI had sufficient minimum contacts with the State of Texas to support the exercise of personal jurisdiction. We affirm the trial court's order.

## I. PERSONAL JURISDICTION

### A. SUBSTANTIVE LAW

 Texas courts may assert personal jurisdiction over a nonresident if it is authorized by the Texas long-arm statute and is consistent with federal and state constitutional due-process guarantees.

*Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002); *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997 & Supp.2007). The long-arm statute allows Texas courts to "reach as far as the federal constitutional requirements of due process will allow." *Am. Type Culture Collection, Inc.,* 83 S.W.3d at 806 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991)); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (acts constituting "doing business" within state for purposes of long-arm statute). Thus, a Texas court may exercise personal jurisdiction over a nonresident if doing so complies with federal due-process requirements. *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex.2007). Those requirements are satisfied if: (1) the nonresident defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

### 1. Nature of Contacts with Texas

 The contacts relevant to a jurisdictional analysis are those through which the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citing *Int'l Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154); *see Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). Only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third

person. *Michiana*, 168 S.W.3d at 785. Such contacts must be purposeful rather than random, fortuitous, or attenuated. *Id.; see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Further, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Michiana*, 168 S.W.3d at 785. What is important is the quality and nature of the defendant's contacts with the forum state, rather than their number. *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806.

**2. Extent of Contacts—Specific and General Jurisdiction**

A nonresident defendant's contacts with the forum state meet the federal due-process minimum contacts standard if the contacts establish either "specific jurisdiction" or "general jurisdiction." *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795–96 (Tex.2002).

**a. Specific Jurisdiction**

Specific jurisdiction exists if the defendant's alleged liability arises out of or is related to the defendant's activities conducted within the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *see also CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). In other words, there must be "a substantial connection between [the nonresident's contacts with the forum] and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. Specific jurisdiction is not established merely by allegations or evidence that a nonresident committed a tort in the forum state or "directed a tort" at the forum state. *Michiana*, 168 S.W.3d at 790–92.

**b. General Jurisdiction**

General jurisdiction exists if the defendant's contacts with the forum are continuous and systematic, whether or not the defendant's alleged liability arises from those contacts. *BMC Software Belgium*, 83 S.W.3d at 796; *CSR Ltd.*, 925 S.W.2d at 595. General jurisdiction is "dispute-blind," as it permits the court to "exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex.2007). Thus general jurisdiction involves a more demanding minimum-contacts analysis than that involved in specific jurisdiction, with a substantially higher threshold for subjecting the out-of-state defendant to personal jurisdiction. *Id.* "Usually, 'the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction.' " *Id.* (quoting 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5). The relevant time period for assessing minimum contacts for general jurisdiction ends at the time suit is filed. *Id.* at 169.

**3. Additional Due–Process Requirements**

Federal due-process also requires the exercise of personal jurisdiction to comport with traditional notions of fair play and substantial justice. *BMC Software Belgium*, 83 S.W.3d at 795 (citing *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154). In making that determination we evaluate the defendant's contacts in light of the following factors: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining con-

venient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *See Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174; *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. 559; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 231. "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 231.

**B. BURDEN OF PLEADING/PROOF**

 The plaintiff bears the initial burden of pleading sufficient allegations to invoke the provisions of the Texas long-arm statute. *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 807; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985) (citing *Siskind v. Villa Foundation for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982)). Upon filing a special appearance, the nonresident defendant assumes the burden of negating all bases of personal jurisdiction alleged by the plaintiff.[1] *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 807; *Siskind*, 642 S.W.2d at 438 (citing E. Wayne Thode, *In Personam Jurisdiction; Article 2031b, The Texas "Long Arm" Jurisdiction Statute; And the Special Appearance to Challenge Jurisdiction in Texas and Elsewhere*, 42 TEX. L.REV. 279, 322 (1964)). In other words, the defendant must disprove the existence of minimum contacts sufficient to establish personal jurisdiction over it—general, specific, or both—as alleged by the plaintiff. *See Am. Type Culture Collection, Inc.*, 83

S.W.3d at 807; Thode, *supra* at 322. However, absent allegations of any specific, purposeful act through which the defendant can be said to have sought a benefit by "availing itself of the jurisdiction," *Michiana*, 168 S.W.3d at 785, evidence that a defendant is a nonresident is sufficient to meets its burden. *See Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 633 (Tex.App.-Dallas 1993, writ denied) (citing *Siskind*, 642 S.W.2d at 438).

**C. STANDARD OF REVIEW**

 Whether personal jurisdiction exists is a question of law, and we review the trial court's ruling on a special appearance de novo. *BMC Software Belgium*, 83 S.W.3d at 794. However, the trial court must frequently resolve fact questions before deciding the jurisdictional question. *Id.* If the trial court does not issue findings of fact, we imply all such findings necessary to support the judgment that are supported by the evidence. *See id.* at 795. When a reporter's record is included in the appellate record, the trial court's findings of fact—express or implied—are not conclusive, and are subject to challenge on evidentiary sufficiency grounds. *See id.* A legal sufficiency challenge to a finding of fact fails if there is more than a scintilla of evidence to support the finding. *See id.* In conducting a factual sufficiency review, we may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Hoffmann v. Dandurand*, 180 S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.).

**II. FACTUAL AND PROCEDURAL BACKGROUND**

This dispute arises out of a contract for Turner Schilling to upgrade GMI's ac-

1. The plaintiff would retain the burden of proof as to any alter-ego theory alleged in support of personal jurisdiction. *See PHC–Minden, L.P.*, 235 S.W.3d at 173.

counting software. GMI is a Kentucky corporation with its principal place of business in Kentucky. GMI provides accounting services to businesses located in several states, including Papa Johns Pizza restaurants. GMI provided accounting services to six restaurants located in Texas until September 2005.

Turner Schilling provides consulting services and acts as a reseller of accounting software. It is a Colorado limited partnership with offices in Colorado and in Lebanon, Tennessee. It also does business in Texas under the assumed name of eMaple International and has an office in Plano.

In early 2005, GMI wanted to upgrade its accounting software and find a software reseller near its Kentucky offices. It accessed the accounting software maker's website and found Turner Schilling listed as a consultant and software reseller, with an address in Lebanon, Tennessee (about sixty miles from GMI's office in Kentucky). GMI contacted Turner Schilling by e-mail and by telephone for a proposal for the software upgrade services. At that time, GMI believed it was negotiating with a company located in Lebanon, Tennessee.

After exchanging e-mail and speaking on the telephone with GMI, Turner Schilling sent one of its partners, Sally Turner Schilling, and an employee to Kentucky to meet with GMI about the project. Afterwards Turner Schilling sent a price quotation to GMI for the purchase of two servers and additional software, plus consulting services and monthly maintenance fees. A few days later, Sally Schilling delivered a "Needs Analysis Proposal" to GMI in Kentucky. The parties refer to this document as the contract. GMI signed the contract in Kentucky and returned it to Turner Schilling by fax. Both the price quotation and the contract listed eMaple's address in Plano, Texas.

According to Sally Schilling's affidavit, before the contract was signed she advised GMI that Turner Schilling would do much of its work on the project out of the Plano, Texas office and that the servers would be located in Texas. GMI disputes this and submitted affidavit and deposition evidence that GMI initially thought much of the work would be done in Denver, Colorado, and that Turner Schilling had offices in several locations.

After the contract was signed, Turner Schilling spent several days in Kentucky working with GMI. Sally Schilling was at GMI's offices in Kentucky almost daily during April, May, and June of 2005. Turner Schilling ordered two servers from Dell Computer in Texas and had them shipped to Dallas. There is evidence in the record that Turner Schilling unilaterally determined to put the servers in Texas to be managed by another company, Mareechi.com. GMI paid eMaple for the servers that were to be owned and licensed to GMI. Turner Schilling installed the software and began customizing the software for GMI. In late March 2005, GMI began accessing the servers through the Internet and using the software. GMI contends the servers were not available at all times and there were two major server crashes.

Part of the contract called for Turner Schilling to train GMI employees on the new software. Initially, this training occurred at GMI's offices in Kentucky. Additional training was done by remote computer connections. GMI's employees did not go to Texas to meet with Turner Schilling or to be involved with the project. Turner Schilling says the vast majority of the training was done by Turner Schilling personnel remotely out of its Texas office.

By the end of 2005, Turner Schilling had migrated GMI's operations from old servers and software to the new servers and software located in Texas. Sometime in

2006, GMI personnel transported the software and data on the new servers to computers at another location. GMI contends the project was not successful and the software did not perform all functions required by GMI. GMI requested Turner Schilling move the new servers to Kentucky, but Turner Schilling refused and the servers are now located in Houston.

Turner Schilling sued GMI in Texas to collect amounts it claims are due on the contract. After a hearing, the trial court granted GMI's special appearance and dismissed the lawsuit for want of personal jurisdiction. The trial court did not file findings of fact and conclusions of law.

### III. ANALYSIS

██ We now turn to the evidence of GMI's contacts with Texas. We will review any evidentiary disputes as to those contacts and determine whether the evidence supports an implied finding against the existence of a particular jurisdictional fact. *See BMC Software Belgium*, 83 S.W.3d at 794. We then review de novo the trial court's decision that the exercise of personal jurisdiction does not comply with federal due-process requirements. *See Moki Mac*, 221 S.W.3d at 575; *BMC Software Belgium*, 83 S.W.3d at 794.

### A. GENERAL JURISDICTION

██ The record indicates GMI does not have any bank accounts or business operations in Texas and owns no property in Texas (except for the two Dell servers purchased by Turner Schilling). There is no evidence GMI had employees in Texas.

Nor is there evidence GMI advertised in Texas or maintained a registered agent for service of process in Texas.

However, Turner Schilling maintains GMI is subject to general jurisdiction in Texas based on its provision of accounting services to the six Papa Johns stores in Texas prior to September 2005. It identifies the following contacts: GMI received some data from the Texas stores through the mail or delivery services; GMI processed data from the Texas stores to prepare payroll for the stores and sent payroll checks or electronic payments to employees; GMI had a "relationship" with the owner of the Texas stores, Texas P.B. Restaurants, L.P.,[2] for several years prior to September 2005; and GMI collected a monthly fee for its services from Texas P.B. Restaurants.

There is evidence GMI received payroll and accounting data from the Texas stores either electronically through the Papa Johns corporate offices in Louisville, Kentucky, or directly through the mail or a delivery service. GMI then processed this data in Kentucky, using its accounting software to perform accounting services including preparation of financial statements, payroll, and sending wage payments either electronically or by checks mailed to the store employees in Texas.

GMI's receipt of data and payments from its client in Texas at its office in Kentucky through the mail, delivery services, or electronically is merely a random or fortuitous contact. While GMI received data from the Texas stores, all processing

---

**2.** Turner Schilling alleged in its petition that GMI did business in Texas through Texas P.B. Restaurants, L.P., which operated Papa John's Pizza franchise stores. The alleged relationship is not shown in the record, beyond some indication of a common director between GMI and Texas P.B. Restaurants at some time. Turner Schilling presented no

evidence or other allegations to support imputing one entity's contacts to another under any theory of jurisdictional veil-piercing. *See PHC–Minden*, 235 S.W.3d at 175–76 (noting that common ownership or directorship will not support jurisdictional veil-piercing). Therefore, we consider only GMI's contacts with Texas.

was done in Kentucky. *See Am. Type Culture Collection, Inc.*, 83 S.W.3d at 808–09 ("[B]ecause [defendant] signed and performed in Maryland its repository contracts and its contract with the University of Texas Southwestern Medical Center, those contracts do not support a finding of general jurisdiction.").

■■■■ GMI did collect a monthly fee from its Texas client for the services it performed in Kentucky. However, this is akin to purchasing goods and services from Texas vendors, and "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *PHC–Minden*, 235 S.W.3d at 171 (quoting *Helicopteros*, 466 U.S. at 418, 104 S.Ct. 1868). Further, entering into a contract with a Texas resident is not enough to support general jurisdiction. *See id.; Am. Type Culture Collection, Inc.*, 83 S.W.3d at 808–09 (citing *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex.1977)).

Nor does the record establish that GMI's contacts with Texas were continuous. The record indicates GMI stopped providing services to the Texas stores in September 2005 (before this suit was filed in March of 2006), and there is no evidence GMI did business with Texas clients after that date. *See PHC–Minden*, 235 S.W.3d at 169 (relevant time period for minimum contacts analysis is some time before and including time suit is filed).

Considering this record, GMI's contacts with Texas did not amount to "continuous and systematic general business contacts" sufficient to support general jurisdiction, "particularly when compared to the substantial, regular business activities conducted by the nonresident defendant in *Perkins [v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48, 72 S.Ct. 413, 96

L.Ed. 485 (1952)]." *PHC–Minden*, 235 S.W.3d at 171. We conclude GMI's contacts with Texas are insufficient to warrant the exercise of general jurisdiction. *Id.*

**B. Specific Jurisdiction**

■■■■ In support of the exercise of specific jurisdiction, Turner Schilling argues GMI intentionally entered into the contract aware that performance would "essentially be accomplished in Texas." Turner Schilling relies on Sally Schilling's affidavit stating that she told GMI before the contract was signed that the majority of Turner Schilling's work on the project would be done in Texas.

■■■ However, the plaintiff's (Turner Schilling's) performance of part of its contract duties in Texas is not a purposeful contact of the *defendant* (GMI) with Texas. The "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant." *Michiana*, 168 S.W.3d at 790. Thus, Turner Schilling's activities in Texas are not relevant to the jurisdictional analysis. *See PHC–Minden*, 235 S.W.3d at 170; *Michiana*, 168 S.W.3d at 785.

The GMI–Turner Schilling contract merely lists Turner Schilling's Texas address at the top of the first page, along with GMI's Kentucky address. It does not specify a place of GMI's performance or contain a choice of forum or choice of law provision. As noted previously, the record here shows GMI performed the contract in Kentucky. GMI's employees accessed remotely the servers and software in Texas, but there is no evidence GMI purposefully directed the servers to be located there.

Further, the record indicates that GMI did not purposefully contract with a Texas provider. Turner Schilling is not a Texas resident; it is a Colorado limited partnership that had an office in Texas. *Cf. Burg-*

*er King Corp.,* 471 U.S. at 479, 105 S.Ct. 2174 (discussing jurisdictional analysis when contract with *forum resident* is involved). Moreover, GMI did not advertise in Texas or solicit Turner Schilling as a Texas business. It sought a software supplier close to its Kentucky offices and did not realize that Turner Schilling even had offices in Texas until well into the contract negotiations.

## IV. CONCLUSION

"For half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'" *Michiana,* 168 S.W.3d at 784. There is no evidence that GMI sought some benefit, advantage, or profit by availing itself of the privilege of conducting activities in Texas, and thus invoking the benefits and protection of its laws. *See id.*

We conclude GMI did not have sufficient minimum contacts with Texas to support the exercise of general or specific personal jurisdiction. We resolve Turner Schilling's sole issue against it. We affirm the trial court's order.