*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-10-00127-CV

**THE PHIA GROUP, LLC** and Michael Sweeney, as Agent, Representative, Servant, Employee
and/or Officer of the Phia Group, LLC,
Appellants

v.

Nelda **GOMEZ**, Duly Appointed Legal Guardian of the Estate of Kayla Deanne Lazo (Minor),
Amador Lazo, and Brittany Lazo,
Appellees

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-09-74
Honorable Alex William Gabert, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed: July 21, 2010

REVERSED AND RENDERED

This is an interlocutory appeal of the trial court's order denying special appearances filed

by The Phia Group, LLC ("Phia") and Michael Sweeney, as agent, representative, servant,

employee and/or officer of The Phia Group, LLC (Sweeney). Phia and Sweeney contend the

trial court erred in denying their special appearances and also challenge the sufficiency of the

evidence to support the trial court's findings of fact. We reverse the trial court's order and render judgment dismissing the underlying cause against Phia and Sweeney.

## BACKGROUND

Kayla DeAnne Lazo was seriously injured as a result of an XBOX game system catching fire. Kayla's father, Amador Lazo, had medical coverage for Kayla through his employer, Basic Energy Services GP, LLC and Basic Energy Services, LP ("Basic Energy"). As a result, Kayla's medical expenses were paid by the Basic Energy Services, LP Employee Health Plan ("Plan"). Phia is a third party administrator of the Plan, and Sweeney is an employee of Phia.

A lawsuit was brought in Duval County against GameStop, Microsoft, and others for the injuries sustained by Kayla, Amador, and Kayla's sister, Brittany Lazo, and a guardian was appointed for Kayla's estate. After a settlement was negotiated with GameStop, an agreement was reached regarding the reimbursement of the Plan's outstanding subrogation lien between Amador and Phia "acting on behalf of [the Plan] and its plan administrator, Group & Pension Administrators, Inc." The agreement (referred to herein as the "Agreement") is in the form of a letter dated February 25, 2008, which Sweeney signed on behalf of Phia as accepting the terms and conditions of the Agreement. The Agreement stated that the total and complete amount of the outstanding subrogation lien was $542,671.13. The Agreement also stated that a payment for fifty-five percent of the outstanding lien, or $289,469.13, would be submitted to Phia on or before March 15, 2008, presumably from the settlement with GameStop. The Agreement further provided, "The Phia Group, LLC will carry over and negotiate a reduction on the remaining amount of the Lien ($244,202.00), **IF, AND WHEN**, a settlement is reached or funding is tendered after a Verdict, between our client and Microsoft."

After the lawsuit against Microsoft and the other defendants was removed to federal court, Microsoft settled, and the claims against the other defendants were dismissed. A dispute arose regarding the reimbursement of the balance of the subrogation lien from the Microsoft settlement. Kayla's guardian filed a lawsuit in Duval County against Amador, Brittany, Phia, and Basic Energy, seeking the following declarations: (1) "Plaintiff does not have to pay monies from any settlement monies in favor of Kayla towards a reimbursement of a lien that is the responsibility of" Amador; (2) Phia, Basic Energy, and Brittany "do not have a legal right to seek any re-apportionment or re-allocation of any of the settlement monies from the underlying litigation;" and (3) "[n]either Plaintiff on behalf of [Kayla], nor [Kayla] (a minor), have entered into any contract or other legal obligation that obligates either to reimburse or pay" Phia or Basic Energy "any sums of money (for reimbursement of their asserted lien)." Amador and Brittany filed a third party petition against Phia, Basic Energy, and Sweeney, alleging they had breached the Agreement by seeking "to recover full balances claimed without any negotiation" not only from Amador, but also from Brittany. The third party petition alleged that the third party defendants agreed to "negotiate" and limit any additional recovery to "our client," which under the terms of the Agreement would be Amador. The third party petition also alleged that the third party defendants had refused to "negotiate, limit their claim" against Amador, thereby obstructing funding of the Microsoft settlement. The third party petition further alleged that the maximum amount the third party defendants could recover under the Agreement was $50,000, which presumably is the amount of the Microsoft settlement that was apportioned to Amador. Finally, the third party petition alleged, "The aforementioned conduct amounts not only to breach of contract but tortuous [sic] interference, intentional infliction of emotional distress, fraud, fraud in the inducement and Bad Faith on the part of Defendants."

Phia and Sweeney filed special appearances.  Although the original special appearances were not sworn, Phia and Sweeney filed verified amended special appearances prior to the trial court's hearing.  The trial court took the special appearances under advisement at the conclusion of a hearing and subsequently signed an order denying the special appearances.  In response to a request, the trial court signed findings of fact and conclusions of law and supplemental findings of fact and conclusions of law.

### STANDARD OF REVIEW

Personal jurisdiction is a question of law which we review de novo.  *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).  However, the trial court frequently must resolve questions of fact before deciding the jurisdiction question.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  If a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds.  *Id*.  In conducting a legal sufficiency analysis, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.  *Rattner v. Contos*, 293 S.W.3d 655, 658 (Tex. App.—San Antonio 2009, no pet.).  We credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not.  *Id*. at 657-58.  If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails.  *Id*. at 658.  In reviewing for factual sufficiency, we examine all evidence in the record and reverse only if the finding is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.  *Id.*  We review the trial court's conclusions of law drawn from the findings of fact de novo.  *Id.*

**JURISDICTION**

A.  Applicable Law

"A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees." *Kelly*, 301 S.W.3d at 657.  "The broad 'doing business' language in Texas's long-arm statute allows the trial court's jurisdiction to 'reach as far as the federal constitutional requirements of due process will allow.'" *Id*. (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)).  "Personal jurisdiction is consistent with due process 'when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.'" *Id*. (quoting *Moki Mac River Expeditions*, 221 S.W.3d at 575).

A nonresident's contacts in the forum state can give rise to either specific or general jurisdiction.  *BMC Software*, 83 S.W.3d at 795.  General jurisdiction arises when the defendant's contacts within the forum are continuous and systematic.  *Id.* at 796.  Specific jurisdiction arises when: (1) the defendant purposefully avails itself of conducting activities in the forum state; and (2) the cause of action arises from or is related to those contacts or activities.  *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009).

"Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly*, 301 S.W.3d at 658.  "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id*.  "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to

negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id*. A nonresident defendant is not required to negate every possible ground in the universe, but rather the acts in Texas alleged by the plaintiff to support personal jurisdiction. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 548 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

B. General Jurisdiction

Kayla's petition alleges that all the defendants, which includes Phia, were companies which reside and/or conduct business principally or substantially in Texas. In their third party petition, however, Amador and Brittany did not allege any facts in support of general jurisdiction. Unlike the allegation that Basic Energy was doing business in Texas, there are no allegations in the third party petition that Phia and Sweeney were doing business in the State of Texas. Instead, the only jurisdictional allegations in the pleading relate to specific jurisdiction arising out of the Agreement. Accordingly, although Phia was required to negate general jurisdiction, Sweeney was not. *See Kelly*, 301 S.W.3d at 658; *Walker Ins. Servs.*, 108 S.W.3d at 548.

When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state. *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). Phia's sworn special appearance states: (1) Phia is not a resident of Texas and has not conducted business in Texas; instead, its principal place of business is in Massachusetts; (2) Phia does not maintain any offices in Texas and does not have a registered agent for service in Texas; (3) Phia has no employees in Texas; (4) Phia has never maintained a suit in Texas; and (5) Phia does not own

any property in Texas.  *See* TEX. R. CIV. P. 120a(3) (providing trial court shall determine special appearance based on pleadings, stipulations, affidavits, discovery, and oral testimony).  The only contact alleged in Kayla's petition to support jurisdiction is that Phia was possibly the company providing medical insurance payments on behalf of Kayla and sought reimbursement for those payments.  Kayla's petition does not allege any activities that Phia undertook in Texas relating to the payments or its efforts in seeking reimbursement.  Based on the record presented, the only specific contact alleged with regard to Phia was its execution of the Agreement.  This contact, however, does not satisfy the requirement of showing that Phia engaged in continuous and systematic contacts with Texas.  *See BMC Software*, 83 S.W.3d at 796.  Accordingly, the record does not support a finding of general jurisdiction.

C.  Specific Jurisdiction

The issue then becomes whether the actions taken by Phia and Sweeney gave rise to specific jurisdiction.  In his supplemental affidavit, Sweeney states that Amador's attorney sent the Agreement to Phia's office in Massachusetts.  Pursuant to the instructions received from Amador's attorney, Sweeney executed the Agreement and returned it to Amador's attorney by facsimile transmission.  Sweeney states that all of his actions were exclusively in Massachusetts, and he initiated no contacts.  In response, Amador states in his affidavit that funds were transferred from the initial settlement pursuant to the Agreement.  Amador further states that Phia and Sweeney refused to honor the Agreement and sought 100% "of the proceeds being tendered" as to both Amador and Brittany.

As previously noted, specific jurisdiction requires a showing of purposeful availment.  In determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas: (1) only the defendant's contacts with the forum are relevant, not the

unilateral activity of another party or a third person; (2) the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Moki Mac River Expeditions*, 221 S.W.3d at 575. In this case, the only contact Phia or Sweeney are alleged to have had with Texas is the Agreement which the evidence shows was faxed by Amador's attorney to Phia's office in Massachusetts.

"[T]he United States Supreme Court has emphatically answered the question whether a single contract with a Texas resident can automatically establish jurisdiction — 'the answer clearly is that it cannot.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 786 (Tex. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18, 478 (1985)). Although a single contract with a Texas resident cannot automatically establish jurisdiction, it may, in some circumstances, meet the purposeful availment standard, "but not when it involves a single contact taking place outside the forum state." *Id.* at 787; *see also Cerbone v. Farb*, 225 S.W.3d 764, 770 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (reversing order denying special appearance where execution of promissory note in a different state in fulfillment of a settlement agreement was only contact). The Agreement was signed in Massachusetts, does not specify where Phia would negotiate in the future, and does not contain a choice of law provision. *See Ashdon, Inc. v. Gary Brown & Assocs., Inc.*, 260 S.W.3d 101, 113 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (asserting contract with Texas company calling for performance outside of Texas does not subject a party to jurisdiction in Texas); *Turner Schilling, L.L.P. v. Gaunce Mgmt., Inc.*, 247 S.W.3d 447, 456 (Tex. App.—Dallas 2008, no pet.) (holding specific jurisdiction not shown where contract with Texas resident did not specify place of performance and did not contain choice of law provision). Moreover, neither Phia nor Sweeney personally

benefitted or profited from the Agreement. Instead, Sweeney executed the agreement on behalf of Phia which executed the Agreement on behalf of the Plan which paid Kayla's medical bills. The settlement proceeds were paid to the Plan which held the subrogation lien. Therefore, the Agreement exclusively benefitted the Plan and Benefit Energy, which does not dispute jurisdiction.

D. Conclusion

Based on the record presented, the execution of the Agreement by Sweeney on behalf of Phia was not sufficient to show the minimum contacts necessary to establish either general or specific jurisdiction. Accordingly, based on the foregoing, we conclude that the trial court's findings relating to jurisdiction were unsupported by the evidence, and the trial court erred in finding that it had jurisdiction over Phia and Sweeney.

## WAIVER

We must separately address the trial court's finding that Phia and Sweeney waived their jurisdictional complaint. Based on the record, it appears that the trial court found waiver because Phia's and Sweeney's initial special appearances were not verified.[1] The record, however, contains amended verified special appearances. The Texas Supreme Court has held that an unverified special appearance does not constitute a general appearance and may be amended any time before the defendant makes a general appearance. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998). Because the amended verified special appearances were filed before the trial court conducted its hearing, the trial court erred in finding the special appearances were waived.

---

[1] At the hearing, Amador's attorney also referred to an order on a motion to quash Sweeney's deposition. The Texas Supreme Court has held, however, that a nonresident defendant does not waive its special appearance by participating in the resolution of discovery matters related to the special appearance. *Exito Electronics Co., Ltd. v. Trejo*, 142 S.W.3d 302, 307 (Tex. 2004).

**CONCLUSION**

The trial court's order is reversed, and judgment is rendered dismissing the underlying cause against Phia and Sweeney for lack of personal jurisdiction.

Rebecca Simmons, Justice