**Affirmed and Memorandum Opinion filed June 4, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00772-CV

## DCENT, INC., Appellant

## V.

## O GUERRERO CONSTRUCTION, INC., Appellee

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2009-02874**

## MEMORANDUM OPINION

In two issues, Dcent, Inc. contends the evidence is legally and factually insufficient to support the trial court's findings in favor of O Guerrero Construction, Inc. ("OGC"). We affirm

### I. BACKGROUND

In 2006, Dcent, as developer, entered into two construction contracts with OGC, as general contractor. Under the first contract, OGC agreed to build three

townhouses at a location on Yale Street. Under the second contract, OGC agreed to build five townhouses at a location on West 22nd Street. Dcent agreed to pay OGC in phases pursuant to a "draw" schedule, meaning Dcent or OGC would notify the lending bank when certain stages of construction were complete, and the bank would then inspect progress and distribute funds to Dcent, which would in turn pay OGC.

During the first half of 2007, OGC completed construction of the Yale townhouses, and Dcent made several partial payments to OGC. However, according to OGC, Dcent breached the Yale contract by refusing to pay $93,770 owed to OGC.

Regarding the West 22nd contract, OGC completed construction necessary for the first and second draws. The bank distributed funds to Dcent, and Dcent sent several checks to OGC. Nevertheless, Dcent failed to pay OGC $161,809 from the second draw. After the second draw, but before OGC completed work necessary for the third draw, Dcent hired an inspector to review the construction. Dcent's inspector reported that the townhouses had "serious flaws" and "substandard construction methods [had been] used," and specifically listed twenty-eight deficiencies. The inspector testified that most, if not all, of the deficiencies were curable. OGC's corporate representative testified the inspector was incorrect relative to many of his complaints because the inspector's review assumed the third draw phase was complete when it was not and OGC actually did obtain required permits and plan approval.

OGC met with Dcent and another contractor to review the alleged deficiencies. They agreed OGC would remedy deficiencies and continue construction under the new contractor's supervision. Nevertheless, shortly thereafter, Dcent terminated OGC. OGC's representative testified that, at the time

2

OGC was terminated, it had only $20,000 more worth of work to perform to be entitled to the third draw, which was for $201,532.

OGC sued Dcent for breach of contract.[1] Dcent asserted a counterclaim based on the Deceptive Trade Practices Act. Following a bench trial, the trial court rendered judgment that OGC recover $388,990.47 in damages and $42,600.00 in attorney's fees, and that Dcent take nothing on its claims. The trial court did not enter findings of fact or conclusions of law.

## II. LEGAL AND FACTUAL SUFFICIENCY

In two issues, Dcent contends the evidence is legally and factually insufficient to support the trial court's implied findings in favor of OGC on its breach-of-contract claim. Dcent does not challenge the trial court's take nothing judgment on Dcent's claim.

## A. Standard of Review

When a bench trial is conducted and the court does not enter findings of fact and conclusions of law to support its ruling, all facts necessary to support the judgment are implied. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). If the appellate record includes the reporter's record and clerk's record, implied findings are not conclusive and may be challenged on the basis of legal and factual sufficiency. *Id.* We review the trial court's decision for legal and factual sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

---

[1] OGC also sued Dcent for quantum meruit, conversion, and constructive fraud, but we need not discuss these claims because we affirm the judgment on OGC's breach-of-contract claim.

When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. When a legal sufficiency challenge concerns an issue on which the appellant did not bear the burden of proof, we review it under a "no evidence" standard and may sustain the challenge only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact. *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646–47 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *City of Keller*, 168 S.W.3d at 810).

In reviewing factual sufficiency, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We may set aside the verdict for factual sufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would support a different result. *Id.* If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Id.*

## B. Analysis

In its brief, Dcent does not assert any reason why its failure to pay OGC the $93,770 owed on the Yale project was not a breach of contract. Regarding the West 22nd project, Dcent argues it did not breach the contract because OGC's representative testified OGC's expenses were $175,000 but Dcent had paid OGC $180,000. According to Dcent, this means OGC profited $5,000 on the West 22nd project and thus did not suffer any loss. However, Dcent's argument ignores that the normal measure of damages in a breach-of-contract case is the expectancy or benefit-of-the-bargain measure. *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Id.*

Regardless of OGC's expenses, the evidence supports a finding that Dcent breached the West 22nd contract because it contractually owed OGC $161,809 out of the second draw. Additionally, the trial court could have reasonably found that Dcent wrongfully terminated OGC because Dcent did not afford OGC ten days to cure the alleged deficiencies before termination, as specified in the contract. Had OGC been allowed to remedy any deficiencies and finish the work necessary for the third draw, it would have been entitled to $201,532.[2] OGC testified that this amount should be reduced by $20,000, because that is how much it would cost to complete the third phase, and by another $20,000, because that is how much OGC owed Dcent for purchasing lumber. Thus, the evidence supports a finding that Dcent owed OGC $161,532 as benefit-of-the-bargain damages related to the third draw. Adding the $161,809 and $161,532 owed for the West 22nd project to the

---

[2] Moreover, the evidence supports a finding that Dcent amended the timing requirements for curing defaults because Dcent and OGC agreed OGC would perform the repairs under another contractor's supervision. Dcent then breached this amendment by terminating OGC.

$93,770 owed for the Yale project equals $417,111 in benefit-of-the-bargain damages.

Dcent notes the West 22nd contract contains the following provision: "If termination [of the West 22nd contract] resulted from an act of default of [Dcent], [Dcent] shall pay to [OGC], within thirty days of written notice from [OGC], an amount equal to all amounts due and owing at the time of the termination, including payment for Changed Work." Dcent argues this provision limits OGC's damages to only the amounts owing at the time of Dcent's breach—which would not include any amount for the incomplete third draw. However, this provision applies when OGC terminates the contract due to Dcent's default. As expressed above, Dcent, not OGC, terminated the contract.

Accordingly, the evidence is legally sufficient to support the trial court's award of $388,990.47 in damages.[3] The evidence is also factually sufficient to support this award because it is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Finally, because we determine the evidence is sufficient to support OGC's breach-of-contract claim, we reject Dcent's argument that the trial court had no basis for awarding attorney's fees.

We overrule Dcent's issues and affirm the trial court's judgment.


/s/     John Donovan
        Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

---

[3] OGC suggests the trial court may have decided to reduce the $417,111 requested by OGC because of some of the deficiencies founds by Dcent's inspector. Dcent does not address this reduction.