# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0715

═══════════

IN THE INTEREST OF H.S., A MINOR CHILD

════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

════════════════════════

JUSTICE GUZMAN, dissenting.

One of life's greatest blessings is the love of family. Perhaps more than anyone, children benefit from secure and loving relationships with their parents and extended family.[1] Heather is fortunate to have parents and grandparents who actively support, guide, and cherish her. Everyone wants the best for Heather, though they may disagree about what that entails or how to achieve it. One thing is certain, however: the instability, ill-will, and financial burdens of litigation are detrimental to the child's well-being and harmful to familial relationships.[2] Litigation may be

---

[1] *See, e.g.*, Centers for Disease Control and Prevention's National Center for Injury Prevention and Control, *Essentials for Childhood: Steps to Create Safe, Stable, Nurturing Relationships & Environments*, (Aug. 2014) ("Safety, stability, and nurturing are three critical qualities of relationships that make a difference for children as they grow and develop."), https://www.cdc.gov/violenceprevention/pdf/essentials_for_childhood_framework.pdf; John Oates, editor, Early Childhood in Focus 1, *Attachment Relationships: Quality of Care for Young Children* (The Open Univ. 2007) (exploring attachment relationships, which offer children physical and emotional security and consistent care and attention), http://oro.open.ac.uk/10292/1/ECiF1as_BvLFweb.pdf.

[2] *See* Katherine K. Baker, *Quacking Like a Duck? Functional Parenthood Doctrine & Same-Sex Parents*, 92 CHI. KENT L. REV. 135, 167 (2017) ("[L]itigation, particularly litigation over children, imposes tremendous emotional and financial costs for no good reason."); Gregory Firestone & Janet Weinstein, *In the Best Interests of Children*, 42 FAM. CT. REV. 203, 203-07 (2004) (outlining the adversarial system's harmful effects on children).

necessary when parents have abdicated their responsibilities and allowed someone else to fulfill the committed parental role,[3] but this is not one of those cases.

Heather's grandparents temporarily assisted their daughter in the care of her child, which is a natural and loving thing to do, especially in times of adversity. But it does not rise to the level of "actual control" in this case because Heather's parents continued to exercise their parental rights, continued to fulfill their parental obligations, and did not perpetuate the grandparents as substitute or functional parents.[4] The record shows that Heather was in day care while both her grandparents and parents worked; after work, Heather's mother cared for her—spending time with her and feeding, bathing, and putting her to bed; Heather's father fulfilled his parental obligations and exercised the rights he was afforded under the possession order; both parents continued to make significant decisions about Heather's healthcare; both parents consulted with and directed the grandparents regarding Heather's care; and both parents remained the primary and ultimate decision-makers about what would be best for their child. Neither the record nor the trial court's fact findings support the conclusion that the grandparents exercised actual control over Heather, but rather were at all times acting under and subject to her parents' control. Accordingly, I agree with Justice Blacklock that the grandparents do not have standing under Section 102.003(a)(9) of the Family Code and therefore join his dissent.[5]

---

[3] *Cf. Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976) (parent-child relationship is of constitutional dimension and encompasses the right of parents to surround their children with proper influences).

[4] *See* TEX. FAM. CODE § 151.001(a), (d)(1).

[5] *Post* at 3 (Blacklock, J., dissenting) ("No one can fully stand in a parent's shoes unless the parent first steps out of those shoes and walks away.").

In my view, any reading of Section 102.003(a)(9) that treats a non-parent's supportive participation in parental decision-making commensurate with actual control over the child is neither reasonable nor consistent with the plain meaning of the term.[6] The right of parents to parent their children—even imperfectly—"is perhaps the oldest of the fundamental liberty interests."[7] When parents are fit to act as parents and are engaged as parents should be, the state has no business intruding on the parent-child relationship. Any construction of Section 102.003(a)(9) that affords standing in such circumstances is unreasonable.[8]

I write separately, however, to clarify a procedural point regarding the scope of review and the force of the trial court's findings on appeal. The grandparents suggest it was improper for the trial court to make fact findings on the standing issue, asserting that under *Texas Department of Parks & Wildlife v. Miranda*,[9] the trial court must view evidence challenging jurisdictional facts in the light most favorable to standing and defer ruling on the jurisdictional matter pending the factfinder's disposition of material disputed facts. And because the existence of jurisdiction is a question of law reviewed de novo, the grandparents assert we must likewise take as true all evidence favorable to them and indulge every reasonable inference in their favor. But the grandparents acknowledge that, when the trial court makes findings of fact and conclusions of law, as in this case,

---

[6] *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "control" as "[t]he power or authority to manage, direct, or oversee"); WEBSTER'S THIRD NEW INT'L DICTIONARY 496 (2002) (defining "control" as "power or authority to guide or manage: directing or restraining domination").

[7] *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality).

[8] *See City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 261 (Tex. 2018) (statutory language is afforded its plain, ordinary, and reasonable meaning).

[9] 133 S.W.3d 217, 226 (Tex. 2004).

3

appellate courts review the trial court's legal conclusions de novo and fact findings for evidentiary support.

The contention that we must view the evidence here in the light most favorable to standing rather than in the light most favorable to the trial court's fact findings reflects a misunderstanding of *Miranda*, which involved a jurisdictional issue intertwined with the merits of the case. When jurisdictional issues do not implicate the merits, the trial court's fact findings are afforded weight if supported by sufficient evidence,[10] and that is true whether the fact findings are express or implied.[11]

*Miranda* is a personal-injury case in which the plaintiff suffered injuries after a tree limb fell on her head while she was engaged in recreational activities at a state park.[12] The defendant asserted sovereign immunity, which the plaintiff could overcome only by establishing gross negligence.[13] Though the plaintiff's pleadings alleged gross negligence, the defendant challenged the existence of that fact with evidence.[14] We held that the trial court was required to consider the parties' jurisdictional evidence, but in doing so, we distinguished jurisdictional challenges that implicate the merits, holding that if the evidence raises a fact issue in such cases, the resolution of the matter is

---

[10] *Cf. BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

[11] *Cf. id.* ("When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied.").

[12] 133 S.W.3d at 220.

[13] *Id.* at 221.

[14] *Id.*

for the factfinder, not the court.[15] Such circumstances invoke a summary-judgment type inquiry,[16] which precludes the trial court from making fact findings.[17]

The same is not true, however, when the jurisdictional inquiry is neither intertwined with nor implicates the merits. Because standing is a prerequisite to subject-matter jurisdiction,[18] the trial court must consider disputed evidence necessary to determine standing and may make findings of fact when the standing question does not involve the merits of the dispute, as in this case. We afford those findings, whether express or implied, deference if supported by sufficient evidence. Conclusions of law and application of law to the facts are, however, reviewed de novo.[19]

The Court gives deference to the trial court's fact findings in this case because they are unchallenged[20] and the dissent does so because they are supported by legally sufficient evidence.[21] The court of appeals opined that the material facts were undisputed.[22] Whether we give deference

---

[15] *Id.* at 223, 226-27 (citing with approval federal court decisions holding that, if a jurisdictional question is inextricably entwined with the case's merits, resolution is for the factfinder).

[16] *Id.* at 225-26.

[17] *See, e.g.*, *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997) (findings of fact and legal conclusions are neither necessary nor proper in a summary-judgment proceeding).

[18] *Sneed v. Webre*, 465 S.W.3d 169, 179 (Tex. 2015) (standing is "a constitutional prerequisite to maintaining suit").

[19] *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001).

[20] *Ante* at 6 ("When the trial court issues findings of fact, as it did here, we defer to those unchallenged findings that are supported by some evidence.").

[21] *Post* at 3 (Blacklock, J., dissenting) ("We should review these findings of fact under a deferential legal sufficiency standard.").

[22] No. 02-15-00303-CV, 2016 WL 4040497, at *1 (Tex. App.—Fort Worth July 28, 2016) (mem. op.) ("The facts are straightforward and undisputed.").

to the trial court's findings or apply the statutory standing framework to the undisputed facts as a matter of law,[23] the result here turns on the proper construction of the statute.  Because I agree with the dissent's construction, and disagree with the Court's, I respectfully dissent.

 

 

_____
Eva M. Guzman
Justice

**Opinion delivered:** June 15, 2018

---

[23] *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) (application of the law to undisputed facts is reviewed de novo).