COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

NEAL AUTOPLEX, INC. D/B/A                    No. 08-12-00136-CV
NEAL SUZUKI,                       §

                                                 Appeal from

               Appellant,        §

                                   153rd District Court

v.                               §

                              of Tarrant County, Texas

LONNIE R. FRANKLIN AND           §
WIFE LISA B. FRANKLIN,                        (TC # 153-241082-09)

                                           §

               Appellees.

## **O P I N I O N**

Neal Autoplex, Inc. d/b/a Neal Suzuki appeals from a judgment awarding Lonnie R. Franklin and his wife, Lisa, damages for a cash price violation. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

This suit arises out of the purchase of a motor vehicle from Neal Suzuki. The undisputed evidence showed that in June 2008, the Franklins purchased a new Suzuki Forenza. The Franklins were finance customers and purchased the vehicle through a retail installment contract. The total vehicle price (sticker price) listed on the Monroney label in the window was $16,464. But the installment contract listed the cash price as $20,865 -- $4,401 over sticker price.[1] The

---

[1] The cash price of the vehicle is listed at $22,012.81. However, that amount includes $1,147.81 in sales tax. Therefore, the cash price minus the included sales tax is $20, 865.

Franklins subsequently sued the dealership alleging: (1) fraud; (2) negligence; (3) negligent misrepresentation; (4) violation of Chapters 348 and 349 of the Texas Finance Code; (5) violation of the Texas Deceptive Trade Practices -- Consumer Protection Act; and (6) negligent hiring and retention, all arising out of their vehicle purchase. On October 31, 2011, the case was tried to the bench. The Franklins testified that on June 21, 2008, they entered into an agreement with the dealership to purchase the vehicle for the sticker price as part of a retail installment contract. The agreement included a promise that their monthly installments would not exceed $400 per month. According to owner Doug Neal, the dealership would have sold the same car to any customer paying cash for the sticker price. He also testified that a customer who bargained well would have likely purchased the vehicle for less than the sticker price.

When the Franklins received their copy of the installment contract, they were surprised to see that the cash price of the vehicle was listed at $20,865, making their monthly installments $418.36 per month. Mr. Franklin called the dealership to inquire about the increased price and was told that the finance company charged a $6,000 processing fee. The Franklins' contract was purchased by Santander U.S.A. (formerly known as Drive Financial), who financed the purchase at an interest rate of 17.95% . Doug Neal confirmed that Santander charged the dealership a fee of $6,087 to purchase the contract. Nevertheless, he claimed the increase was not due to the fee charged by Santander but was simply due to the fact the Franklins "didn't negotiate the best deal." Mr. Neal also testified that the dealership did not make a profit on the sale. Mr. Blevins, an employee of Santander, testified that before financing a deal, someone from Santander calls the applicant (in this case the Franklins) to verify the terms of the contract. According to Blevins, he contacted the Franklins for a customer interview in July 2008 and went through all the details of the contract, including the purchase price and monthly payments. He referred to

the $6,087 purchase price as a discount fee. According to him, it is illegal for a dealership to pass the fee on to the consumer. Sergio Padilla, a vice-president of Santander, pointed to company records indicating that Mrs. Franklin called Santander sometime prior to September 2008. The notes stated:

> Customer said that the dealership told her that [Santander] charged her a $6,000 processing fee. Customer was told that is incorrect.

After hearing the evidence, the trial judge ruled that the Franklins failed to prove their causes of action for fraud, negligence, negligent misrepresentation, deceptive trade practices, and negligent hiring and retention, but ruled in favor of the Franklins on their cash price violation claim, finding that Neal Suzuki violated Chapters 348 and 349 of the Texas Finance Code. The court awarded statutory damages in the amount of $13,203 plus attorney's fees in the amount of $22,525.[2] In the final judgment the trial judge also awarded conditional attorney's fees in the event of an appeal.

The trial court entered findings of fact specifying that: (1) the "cash price" for the vehicle on the date the Franklins signed the purchase documents was $16,464; (2) Neal Suzuki sold the vehicle to the Franklins for $20,865; (3) Neal Suzuki charged the Franklins $4,401 more than the cash price was because they were obtaining financing to purchase the vehicle; and (4) by charging the Franklins more for the vehicle than they would have charged a cash customer for the same vehicle, Neal Suzuki violated Sections 348.004 and 349.001 of the Texas Finance Code.

On appeal, Neal Suzuki argues there is no evidence, or alternatively, insufficient evidence, to support a finding of a cash price violation. For reasons that follow, we affirm.

---

[2] The statutory damages award is three times the difference between the sales price (excluding applicable taxes), $20,865 and the vehicle's sticker price, $16,464.

**STANDARDS OF REVIEW**

In an appeal from a bench trial, the trial judge's findings of fact have the same force and effect as jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Bledsoe Dodge, L.L.C. v. Kuberski*, 279 S.W.3d 839, 841 (Tex.App.--Dallas 2009, no pet.), *citing Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex.App.--Dallas 2006, pet. denied). Where, as here, an appellant challenges the sufficiency of the evidence to support a trial court's findings of fact, we review them just as we would review the sufficiency of the evidence to support jury findings. *Bledsoe*, 279 S.W.3d at 841. We review conclusions of law *de novo* and will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies*, 409 S.W.3d 181, 187 (Tex.App.--Dallas 2013, no pet.).

In conducting a legal sufficiency review, we view the evidence in a light favorable to the trial court's fact finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing the factual sufficiency of the evidence, we examine all of the evidence, and we set aside a finding of fact only if it is so contrary to the evidence as to be clearly wrong and unjust. *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex.App.--Dallas 2005, pet. denied).

**CASH PRICE VIOLATION**

Under the Texas Finance Code, a "cash price" violation occurs when a retail seller establishes a cash price for a vehicle and sells the vehicle for more than that established price. TEX.FIN.CODE ANN. § 349.001(a)(West 2006); *Collins v. Fred Haas Toyota*, 21 S.W.3d 606, 607 (Tex.App.--Houston [1st Dist.] 2000, no pet.). The "cash price" of a vehicle is defined as "the

price at which the retail seller offers in the ordinary course of business to sell for cash the goods or services that are subject to the transaction." TEX.FIN.CODE ANN. § 348.004(a)(West Supp. 2013); *Collins*, 21 S.W.3d at 607. "The underlying purpose of a cause of action for a cash price violation is to prevent a dealership from charging a finance customer more than a cash customer for the same vehicle." *Bledsoe Dodge, L.L.C. v. Kuberski*, 279 S.W.3d at 842, *citing Collins*, 21 S.W.3d at 607.

Appellant does not specify which findings are unsupported by evidence. Nor does it address the evidence demonstrating that the price charged to the Franklins was more than the sticker price of the vehicle and that the sticker price of the vehicle is the price charged in the ordinary course of business. Instead, Appellant's argument is based on the assertion that because the Franklins were fully aware that they were agreeing to buy the vehicle for more than the sticker price and agreed to pay the increased amount, no cash price violation occurred. This ignores the fact that, even assuming the Franklins were fully aware of and agreed to the increased price, the cash price of the vehicle is not defined as the price ultimately agreed upon or stated in the contract. *See Collins*, 21 S.W.3d at 608. Rather, the cash price of the Franklins' vehicle is the price Appellant offered to all customers in the ordinary course of business to all customers. *See id.*

The difference between the sticker price and the purchase price was more than a scintilla of evidence showing that the price offered in the ordinary course of business was less than the price ultimately charged to the Franklins. Viewing all evidence in the light most favorable to the trial court's decision, there is sufficient evidence to support the trial court's finding that the increase in price was due to the fact that the Franklin's were financing the vehicle. The evidence is therefore legally sufficient to support the trial court's finding that a cash price violation

occurred.  The evidence is also factually sufficient.  Appellant does not point to any evidence in the record, nor do we find any, to demonstrate the price offered to customers in the ordinary course of business was anything over the sticker price.  In other words, the trial court's findings are not so contrary to the evidence as to be clearly wrong and unjust.  We overrule the sole issue and affirm the judgment of the trial court.


February 5, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.