

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00018-CV

DON K. MCCLENDON, Appellant

V.

JON L. MCCLENDON, Appellee

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2017-1415-CCL2

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORNADUM OPINION

This dispute involves the partition of two adjacent tracts of land in Gregg County, which are co-owned equally and occupied by brothers Don K. McClendon and Jon L. McClendon. After some disputes over certain structures on the property, Jon sued Don seeking a judicial partition of the property. Following a bench trial over the equitable issues in the case, the County Court at Law Number 2 of Gregg County appointed commissioners to partition the property. After the commissioners issued their decision on the partition, Don objected to the commissioners' report. The trial court then conducted a second bench trial, at which time it addressed Don's objections. Following the second bench trial, the trial court denied Don's objections to the commissioners' report, approved the commissioners' report, and entered findings of fact and conclusions of law.

On appeal, Don contends that the evidence is legally and factually insufficient to support the trial court's findings that (1) the commissioners' followed the trial court's instruction to increase the value of the tract awarded to Don by $10,000.00 and (2) the partition as a whole was just and fair. Because there was legally and factually sufficient evidence that (1) Don's allocated portion of River Tract was worth $10,000.00 more than Jon's allocated portion and (2) the partition as a whole was just and fair, we affirm the trial court's judgment.

## I. Partition Proceedings

The Texas "Rules of Civil Procedure set forth a two-stage process for the partition of real estate," and each stage leads to a final, appealable judgment. *Bowman v. Stephens*, 569 S.W.3d 210, 221 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see* TEX. R. CIV. P. 756–771. In the

first stage, the trial court's judgment determines whether the property is susceptible to partition in kind, decides the fractional interest of each joint owner, resolves all questions of law or equity affecting title, and determines the value of improvements to provide for the adjustment of equities between the parties. *See* TEX. R. CIV. P. 761; *Yturria v. Kimbro*, 921 S.W.2d 338, 342–44 (Tex. App.—Corpus Christi 1996, no writ). As a result, arguments about the existence and value of improvements or equitable claims that a particular party should receive a particular tract are resolved in the first stage of the proceedings. *Yturria*, 921 S.W.2d at 342–44. If the trial court determines that the property is susceptible to partition in kind, then it may appoint commissioners to divide the property in accordance with the trial court's equitable and legal determinations. *Id.* at 342.

"In the second stage, the commissioners consider the property's characteristics and evaluate objective considerations for dividing the property to retain the partitioned tracts' highest value." *Bowman*, 569 S.W.3d at 222. The commissioners determine the "exact manner of valuing the real property" and the appropriate method of "dividing that property into shares among the parties." *Yturria*, 921 S.W.2d at 342. Because the commissioners lack judicial powers, they must rely on the trial court's instructions, and legal and equitable determinations from the first stage, in making their decisions. *Id.*

Once the commissioners have made their decisions, they submit a report, under oath, to the trial court, stating their recommendations for the actual property partition. TEX. R. CIV. P. 766, 769. Any party objecting to the commissioners' report must file their objections within thirty days, and the trial court shall hold a trial on the objections. TEX. R. CIV. P. 771. The party

objecting to the report has the burden of proving that it is materially erroneous or that it is an unequal or unjust division of the property. *Ellis v. First City Nat'l Bank*, 864 S.W.2d 555, 557 (Tex. App.—Tyler 1993, no writ). If the trial court overrules the objections to the commissioners' report, if any, and the report is otherwise materially correct, the trial court may approve the report in a second judgment. *See Bowman*, 569 S.W.3d at 222. That said, the trial court's judgment must reject the report and appoint new commissioners if the trial court sustains an objection to it, finding it to be "erroneous in any material respect, or unequal or unjust." TEX. R. CIV. P. 771.

## II. Factual and Procedural Background

Jon and his twin brother, Don, each owned an undivided one-half interest in two tracts of real property in Gregg County, Texas. One tract, the "River Tract," consisting of 23.67 acres, overlooks the Sabine River. The other tract, the "Farm Tract," consisting of 20.61 acres, is located on Bar M Road. The brothers are the sole owners of the two tracts and have a common source of title.

In July 2017, Jon sued in the County Court at Law Number 2 of Gregg County, seeking, in part, to have the tracts partitioned in kind and divided by court-appointed commissioners. Jon's petition alleged that Don had torn down half of a barn located on the Farm Tract, which Jon had to pay to repair. Jon also alleged that Don had threatened to remove his half of other structures located on the properties. The parties eventually stipulated that the properties could be partitioned in kind, and when the trial court agreed, it entered an order of partition and appointed

4

commissioners. Even so, Jon filed a motion for new trial, and the trial court granted the motion and set aside its previous judgment.

In June 2019, the trial court held a bench trial to address the parties' equitable arguments about the division of the properties and the instructions to be given to the appointed commissioners. Jon and Don were the only witnesses to testify at the trial. Jon testified that he and Don each built their respective residences on the River Tract, that they also individually built separate houses on the Farm Tract, and that there were various other jointly-built-and-paid-for structures on the two tracts, including a large, $30,000.00 shed on the Farm Tract that was built in the 1980s. Jon also testified that Don had built a new boat ramp and "a big shed" near his home on the River Tract and that Don had built and paid for those structures on his own.

Although Jon and Don built the "old" boat ramp together and split the $2,050.00 cost of the concrete, Jon claimed that he alone paid $1,800.00 for the six loads of asphalt and $441.00 for the support rods used to build the ramp. Because the boat ramp is next to his driveway, Jon testified that he had conflicts with his brother because Don allowed other people to use the ramp. According to Jon, these other people created ruts in his driveway, damaged his grass and yard, behaved inappropriately, and parked in front of his house.

Don confirmed that he and Jon built the old boat ramp together and the pipe fence surrounding the ramp road, but he could not remember who paid for the construction materials. He testified that the old boat ramp area is prone to flooding and getting muddy. Don owns the land next to the portion of the River Tract where his house and the new boat ramp are located, and Jon owns a small tract of land that shares a border with the Farm Tract. Don claimed that

5

the new boat ramp was on his separate property, but he admitted that he had never had the area surveyed.

Don testified that the "big shed," or workshop, he built near his home was sixty-five feet by forty feet and included a small living quarter. He built the $50,000.00 structure due to Jon's complaints about his use of the large shed on the Farm Tract. Don explained that, because of Jon's issues with his use of a water well on the property, he had another well drilled at a cost of almost $10,000.00. Don also pointed out that a portion of the Farm Tract still had "oilfield junk" on it, including "concrete, open pressure pads, tank pads, [and] pits."

In summary, Jon argued that the trial court should instruct the commissioners to divide the property in a way that (1) Jon and Don would each retain their respective residences and houses on both tracts, (2) Jon would receive the old boat ramp next to his home, (3) Jon would receive credit for the separate costs he paid for the construction of the boat ramp, and (4) Jon would receive credit for the cost of rebuilding the barn that Don partially destroyed. Don agreed that he and Jon should each receive their houses on each tract and that Jon should be given the damaged and rebuilt barn to compensate him for the rebuilding cost. Don also argued that he should receive credit for the funds and labor he put into building the old boat ramp and that the commissioners should consider the value of the hay crop existing on the property as well as the improvements he had made at his sole cost.

In July 2019, the trial court entered an order of partition and appointed commissioners. The trial court found that the properties were susceptible to partition in kind. The trial court then instructed the commissioners as follows:

6

The Commissioners shall partition this property into two parts, each share to contain one or more tracts or parcels, as the Commissioners may think proper, having due regard in the division of the situation, quantity, and advantages of each share, so that the shares may be equal in value, as nearly as may be. The Commissioners shall further make those Equitable Adjustments as set forth in Exhibit "B" attached hereto and incorporated herein.

In Exhibit B, the trial court instructed the commissioners to divide the River Tract and the Farm Tract between the brothers with each of them receiving their separate residence as well as a share of each tract with "due regard in the division to the situation, quantity and advantages of each share so that the shares may be equal in value, as nearly as may be." The trial court also instructed the commissioners, in pertinent part:

4.      With regard to the home of JON MCCLENDON, you are instructed to include the boat ramp within the home tract of JON MCCLENDON, due to the proximity of the boat ramp to his residence. You are to increase the value of the tract awarded to DON MCCLENDON by $10,000.00.

5.      With regard to the FARM TRACT, you are instructed to include the barn with the tracts awarded to JON MCCLENDON.

6.      You are instructed to take note of the existence of an old oil & gas plant site with concrete sub-surface contaminations, old concrete pads and oilfield debris on the FARM TRACT, and make corresponding adjustments, as necessary, to the benefit of the party being awarded said portion of the FARM TRACT.

. . . .

10.     In cases such as this, where there are multiple tracts, each party is not entitled to an equal share of each tract, but each party is entitled to an equal share of the entire commonly owned property.

In October 2019, the commissioners issued their Special Commissioners Partition Division report, specifying that:

7

1.     RIVER TRACT

The partition line should be located 20 feet southwest of the centerline of the drainage ditch that traverses in a southeasterly direction where it would intercept the existing driveway of Jon McClendon's residence. The line would then follow the southwest side of the driveway in a straight line to where it would intersect with Phillips Road.

8.350 Acres to Don McClendon

15.277 Acres to Jon McClendon

See Exhibit A.

2.     FARM TRACT

The partition will be from Bar M Ranch Road to the existing signal road, past the horse barn to a drive going south and the partition would go from the gravel drive westward past the well to the edge of the property. Both parties will have access off Bar M Ranch Road to their properties by way of existing roads.

13.9 Acres to Don McClendon
6.9 Acres to Jon McClendon

See Exhibit B.

Under the commissioners' division, the brothers received roughly the same amount of overall property; Don received 22.177 acres and Jon received 22.25 acres.

Don timely objected to the partition report, arguing that the division was "erroneous, unequal, unfair or otherwise unjust." First, although the commissioners awarded the old boat ramp to Jon, per the trial court's instructions, Don claimed that the commissioners failed to "increase the value of the tract awarded to [Don] by $10,000.00." Secondly, Don argued that, even though they were awarded roughly equal amounts of total acreage, "the value of the share awarded to him [was] grossly less in value than the share awarded [to] Jon" because the

8

commissioners failed to follow the trial court's instructions to consider the "quantity and advantages of each share." Don contended that the commissioners disregarded the "existence of the pipeline easements," the existence of the old oil and gas plant site, and the "existence of the cleared portions" of the properties awarded.

The trial court conducted a bench trial on Don's objections. Don testified that, even though it was "hard to determine" from the maps admitted at trial, he believed that the portion of the Farm Tract containing the remnants of the oil and gas plant, including a benzene-tainted water well, were awarded to him in the partition. From his examination of the property division, the commissioners failed to give him a $10,000.00 credit for the old boat ramp and failed to compensate him for the liabilities of the oil and gas equipment. That said, Don admitted that his awarded portion of the Farm Tract included the workshop, one shallow water well, and two deep water wells along with the benzene-tainted well. His awarded portion of the River Tract also included a shop, even though neither of the tracts awarded to Jon included a shop.

Jon testified that Don's house on the bluff of the River Tract has a "million-dollar view" and that it barely ever floods. Yet, the portion of the River Tract awarded to him was prone to serious and frequent flooding. Although their respective portions of the River Tract were about equally burdened with pipeline easements, Jon testified that his awarded portion also contained a "heavy duty highline" and utility easement that isolated part of his property. Jon also explained that, while his awarded portion of the Farm Tract was burdened with 100 to 150 yards of pipeline easement, Don's awarded portion included "may be 5 feet of the pipeline that's -- that's active."

9

Jon called Daryl Atkinson, one of the trial court's appointed commissioners, to testify during the trial on Don's objections. Atkinson testified that he and the other two appointed commissioners used the property valuation information submitted to them by the trial court and counsel for both parties. The commissioners then divided the property in accordance with the trial court's instructions. Afterwards, they prepared and submitted the partition report in this case. Atkinson also testified that the commissioners increased the share awarded to Don by $10,000.00. He explained that, in dividing the property, the commissioners considered the equipment and remains from the oil and gas plant site, which portions of the properties had been cleared of timber, and the existence of pipeline easements. Atkinson believed that the commissioners' chosen division of the property was as financially equal as possible under the parameters set by the trial court.

Blair Abney, a state-certified real estate appraiser listed in the case as Jon's expert witness, testified that he had reviewed the partition report. Abney confirmed the total acreage awarded to each brother, as well as the acreage from each tract awarded to Jon and Don, respectively. Abney also testified that, while he had appraised the Farm Tract and the River Tract, he had never appraised the partitioned portions awarded to each brother. He confirmed that Jon received the old boat ramp and that it appeared that Jon received more river-front acreage on the River Tract than Don. Abney also explained that the portion of the Farm Tract that Don received included the pads, pits, and equipment from the former oil and gas plant and that the equipment and abandoned wells could devalue the property "depending on their influence."

10

Abney testified that, in his experience, proper partitioning should balance a property's positive attributes against its negative attributes. He speculated that, to balance out a positive award, such as the boat ramp, "the commissioners considered the power line easements on the [R]iver [T]ract, and the flood zone areas [awarded to Jon], as well as the bluff view [from Don's house]; things like that that make differences in land valuations." When asked whether, in his opinion, "there would be a difference of as much as $10,000 to the benefit of Don" between the partitioned portions of River Tract, Abney responded in the affirmative, saying that it would be "pretty close" because five of the River Tract acres awarded to Jon were "not usable for a rural residential-type use" because of the "power line" easement, and "the bluff with the expansive view" was worth more than the "closed view that's subject to flooding." Based on his review of the partition report and the tracts awarded, he did not believe that the commissioners committed a "material error," he found no "insufficiencies," and he concluded the commissioners did "their job."

On February 18, 2020, the trial court denied Don's objections, which led to the acceptance of the commissioners' partition report. Don appealed from the trial court's order. At Don's request, the trial court entered findings of fact and conclusions of law.

## III.  Standard of Review

On appeal, Don argues that the value of the property awarded to him was not increased by $10,000.00 and that the division, as a whole, was unequal because the commissioners disregarded the equipment and remnants of the oil and gas plant. Don's argument specifically challenges the legal and factual sufficiency of the evidence to support the trial court's findings

(1) that the "Commissioners increased the value of the tract awarded to [Don] by $10,000.00 in compensation for awarding the boat ramp to Jon" and (2) that the "Commissioners report partitioned the subject real property in shares which are equal in value, as nearly as may be with regard to the interests of each party . . . with due regard in the division of the real property to the situation, quantity and advantages of each share."

A trial court's findings of fact are not conclusive and, like a jury's verdict on questions, may be challenged for legal and factual sufficiency of the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). "[A]n appellant challenging the sufficiency of the evidence offered in a nonjury trial must challenge specific findings of fact." *Boucher v. Thacker*, No. 06-19-00055-CV, 2020 WL 5163602, at *8 (Tex. App.—Texarkana, Sept. 1, 2020, no pet. h.) (alteration in original) (quoting *Green v. Alford*, 274 S.W.3d 5, 17 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). We review the sufficiency of the evidence supporting a trial court's challenged findings of fact by applying the same standards we use in reviewing the sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, the reviewing court credits favorable evidence if a reasonable fact-finder could, and disregards contrary evidence unless a reasonable fact-finder could not. *Id*. If the evidence falls within the zone of reasonable disagreement, then the reviewing court may not substitute its judgment for that of the fact-finder. *Id*. at 822.

In reviewing factual sufficiency, we consider and weigh all the evidence supporting and contradicting the challenged finding and set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Boucher*, 2020 WL 5163602, at *8. A reviewing court may review the legal conclusions "drawn from the facts to determine their correctness." *BMC Software Belgium, N.V.*, 83 S.W.3d at 794.

A reviewing court applies a de novo standard to review a trial court's conclusions of law in a bench trial "and will uphold them if the judgment can be sustained on any legal theory supported by the evidence." *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see City of Keller*, 168 S.W.3d at 822. If the reviewing court determines a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *BMC Software*, 83 S.W.3d at 794; *Boucher*, 2020 WL 5163602, at *8.

**IV.    There Is Sufficient Evidence that the Commissioners Followed the Trial Court's Instruction to Adjust the Value of the Property Awarded to Don**

In his first point of error, Don contends that the evidence is legally and factually insufficient to support the trial court's finding that the Commissioners adjusted the value of the property awarded to him by $10,000.00. We disagree.

Based on the testimony that Jon was given 15.277 acres of the River Tract, that Don received 8.350 acres of the River Tract, and that the River Tract was worth about $5,000.00 per acre, Don argues that the value of his portion was about $41,750.00, while the value of Jon's portion was $76,385.00. Don, therefore, contends that the commissioners could not have

13

increased the value of his portion by $10,000.00 as instructed by the trial court. But the evidence does not support Don's conclusion.

Atkinson testified that he and the other commissioners increased Don's awarded share of the property by $10,000.00. Moreover, although Abney testified that an average acre of the River Tract was worth about $5,000.00, he gave uncontested testimony that the acreage awarded to Don was "pretty close" to being worth $10,000.00 more than the acreage awarded to Jon because five acres of Jon's property was "not usable for rural residential-type use" because of a utility easement. Abney also explained that Jon's property lacked a view and was prone to flooding, while the acreage awarded to Don included "the bluff with the expansive view." Abney concluded that Don's awarded property was worth more per acre than the property awarded to Jon. As a result, we find that the evidence presented falls within the zone of reasonable disagreement and is not so weak as to make the finding clearly wrong or unjust. *See City of Keller*, 168 S.W.3d at 822, 827; *Cain*, 709 S.W.2d at 176. We also find that the evidence is legally and factually sufficient to support the trial court's finding that the commissioners increased the value of Don's award by $10,000.00. For these reasons, we overrule Don's first point of error.

## V. There Is Sufficient Evidence that the Partition as a Whole Was Fair and Equitable

In his final point of error, Don contends that the partition as a whole was unequal and unjust because the evidence was legally and factually insufficient to show that the commissioners considered "the oil and gas plant site [on the Farm Tract] in making equal division of the property." Whether the commissioners partitioned the tracts of real property

14

equally according to value or whether the commissioners disregarded the old oil and gas plant are questions of fact to be decided by the trial court as the finder of fact. *See Price v. Price*, 394 S.W.2d 855, 859 (Tex. App.—Tyler 1965, writ ref'd n.r.e.).

In the partition of the Farm Tract, Don received 13.9 acres and Jon received 6.9 acres. Even though Don received almost twice as much of the Farm Tract acreage as Jon, it was undisputed that most of the concrete, pads, equipment, and pits from the brothers' old oil and gas plant was located on the property awarded to Don. Don argues that, because he received the remnants of the oil and gas plant, "the fact that [he] received more acres of the Farm Tract than Jon is cancelled out or even still puts [him] at a disadvantage." He also contends that, besides the commissioners failing to increase the value of his allotted share of the River Tract by $10,000.00, as argued in his first point of error, the entire partition was unjust and unfair because the commissioners also failed to consider the loss of value caused by the oil and gas materials. We disagree.

Generally, the commissioners' report will not be set aside absent a showing that the commissioners are biased, or the allotted shares are unequal in market value. *See Roberts. v. Philpot*, 435 S.W.2d 614, 615 (Tex. App.—Tyler 1968, no writ). Don produced no financial evidence that his allotted tracts were worth less than the tracts allocated to Jon. Atkinson testified that, in dividing the two tracts, he and the commissioners considered the equipment and remains from the oil and gas plant site, as well as which properties had been cleared of timber and which were burdened by easements. Don admitted that his share of the Farm Tract was twice as large as Jon's and that it included a large work shop, one shallow water well, and two

15

deep water wells, even though neither of the tracts awarded to Jon included a workshop. Jon's allocated portion of the Farm Tract was burdened with 100 to 150 yards of pipeline easement, but Don's portion included only "may be 5 feet of the pipeline that's -- that's active." Atkinson testified that the division was as fair as they could make it while adhering to the trial court's instructions. Abney agreed, testifying that, based on his review of the partition report and the tracts awarded, he did not believe that the commissioners committed a "material error," he found no "insufficiencies," and he concluded the commissioners did "their job."

As explained above, the evidence is legally and factually sufficient to support the trial court's finding that the commissioners increased Don's allotted share of the River Tract by $10,000.00. Here, the trial court was free to believe the testimony of Atkinson and Abney, who explained that the disadvantages of Don's allocated portion of the Farm Tract were reasonably offset by receiving twice as much acreage as Jon did. Additionally, Don's portion was largely free of pipeline easements. For those reasons, we find that a reasonable fact-finder could have determined that the commissioners followed the trial court's instruction to take the oil and gas remnants into account, that the commissioners partitioned the property in equal shares with "due regard in the division to the situation, quantity and advantages of each share," and that such a finding is not against the great weight and preponderance of the evidence. *See City of Keller*, 168 S.W.3d at 822, 827; *Cain*, 709 S.W.2d at 176. As a result, we overrule Don's second point of error.

16

## VI.      Conclusion

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:      September 4, 2020
Date Decided:        November 18, 2020

17